Terry M. CASSETTARI; FSA Corporation, a California corporation; Plaintiffs-Appellants,

v.

COUNTY OF NEVADA, CALIFORNIA; Nevada County Building Company, a California corporation; Williams & Paddon, Architects & Planners, Inc.; Defendants-Appellees.

No. 86–2002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1987.

Decided Aug. 10, 1987.

E. John Vodonick, Auburn, Cal., for plaintiffs-appellants.

John P. Byrd and Thomas H. Smith of Barrett, Penney & Byrd, Melvin E. Raatz (argued), Sacramento, Cal., for defendants-appellees.

---

Before FLETCHER, BEEZER and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Plaintiffs-appellants Terry M. Cassettari and FSA Corporation[1] (collectively "Cassettari") appeal from the district court's order dismissing federal constitutional and section 1983 claims for failure to state a claim upon which relief could be granted, and dismissing pendent state claims for lack of subject matter jurisdiction. Cassettari alleges that defendant-appellee Nevada County, California (the County) accepted his proposal to build a County Administrative Center (the Center) on property he would acquire (the Narrow Gauge 40 property). He further alleges that after he spent over $450,000 in pre-construction development costs for the Center, the County decided to build the Center elsewhere. Cassettari alleges that the County then bought from defendant-appellee Williams & Paddon, Architects & Planners, Inc. (Williams & Paddon) architectural designs which Cassettari had paid Williams & Paddon to prepare. Cassettari contends that the County's conduct amounted to a taking of his property without just compensation in violation of the fifth amendment, and deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. He also contends that the County, the Nevada County Building Company,[2] and Williams & Paddon conspired to violate his section 1983 rights in violation of 42 U.S.C. § 1985(3). Because Cassettari's allegations do not state federal claims upon which relief may be granted, we affirm the district court's dismissal of the federal claims. We also affirm the dismissal of the pendent state claims.

## BACKGROUND

In 1983, Cassettari became aware that the County was interested in building a new administrative center. Cassettari entered into negotiations to acquire the Narrow Gauge 40 property, and offered to dedicate ten acres of the property to the County as a site for the Center. In response to requests by the County, Cassettari made a proposal for development of the site. In November 1983, the County passed a resolution expressing its intent to accept the site and contract with Cassettari to develop the Center, contingent on receipt of a bona fide construction bid.

Cassettari employed Williams & Paddon to prepare architectural designs for the Center, and provided them with "plans, specifications, calculations and the like" supplied by Cassettari's engineers. Williams & Paddon and Cassettari agreed that the architectural designs prepared by Williams & Paddon, as well as the plans and specifications provided by Cassettari's engineers, would be Cassettari's exclusive property. On August 6, 1984, the County entered into a written agreement with Cassettari. This agreement provided that if the County received a bona fide construction bid for the Center it would pay Cassettari $289,252.36 for the architectural designs.

On August 22, 1984, GLM Associates, a construction contractor, submitted a bid to build the Center on the Narrow Gauge 40 property. On August 27, 1984, the County determined by resolution that the bid was not bona fide because it did not include a signed bid bond or a list of subcontractors. Additional bids were taken. The County then determined that none of the bids was bona fide, and on January 7, 1985 it passed a resolution rejecting all bids. The County then decided to consider other sites for the Center, and on March 4, 1985 it selected a site other than Cassettari's. The County then paid Williams & Paddon $202,651 for copies of the architectural designs which they had prepared for Cassettari. Nothing was paid to Cassettari.

---

1. Cassettari is the Chief Executive Officer of FSA Corporation.

2. Defendant-appellee Nevada County Building Company was responsible for developing the Center as directed by the County.

In addition to the various state claims, Cassettari alleges four federal claims. First, Cassettari contends that the County took without just compensation: (1) his interest in the architectural designs for the administrative center, and (2) part of the value of the Narrow Gauge 40 property. Second, Cassettari asserts that this taking deprived him of constitutional rights in violation of 42 U.S.C. § 1983. Third, Cassettari alleges a conspiracy by the defendants to deprive him of section 1983 rights in violation of 42 U.S.C. § 1985(3). Fourth, Cassettari requests attorney fees under 42 U.S.C. § 1988.

The defendants moved to dismiss the federal claims for failure to state a claim upon which relief could be granted and the state claims for lack of subject matter jurisdiction. The district court granted the defendants' motion. Cassettari then filed an amended complaint, and the County again moved to dismiss. The district court dismissed the fifth amendment "taking" claim as "premature." The district court also dismissed Cassettari's section 1983 claim because "plaintiff [could] allege no facts stating a claim upon which relief can be granted." The court then dismissed the conspiracy and attorney fees claims. Having dismissed all of Cassettari's federal claims, the district court declined to exercise pendent jurisdiction over the state claims and dismissed those as well. Cassettari appeals. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review de novo a district court's dismissal of claims for failure to state a claim upon which relief can be granted. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986). An action may be dismissed for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986)

(citations omitted), *cert. denied,* —— U.S. ——, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). Our review is limited to the contents of the complaint, and all allegations of material fact must be taken as true and construed in the light most favorable to the non-moving party. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986).

## DISCUSSION

### A. *The Fifth Amendment Taking Claim*

Cassettari contends that the County's conduct "resulted in a permanent and substantial interference with Plaintiffs' use and enjoyment of their property rights amounting to a taking of an interest in Plaintiffs' property and property rights, without compensation, in violation of the Fifth Amendment to the United States Constitution."[3] Cassettari does not allege that he made use of the state procedures which were available for obtaining just compensation for the taking of his property. In *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court addressed the issue whether a taking of private property by a county can be deemed a violation of the fifth amendment's just compensation clause prior to use of available state compensation procedures.

The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking.... Thus ... *if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of*

---

**3.** The fifth amendment states, in relevant part: "[N]or shall private property be taken for public use, without just compensation." The taking without just compensation clause of the fifth amendment applies to the states through the

fourteenth amendment. *See, e.g., Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 175, n. 1, 105 S.Ct. 3108, 3111, n. 1, 87 L.Ed.2d 126 (1985).

*the Just Compensation Clause until it has used the procedure and been denied just compensation.*

.    .    .    .    .

Under Tennessee law, a property owner may bring an inverse condemnation action to obtain just compensation for an alleged taking of property under certain circumstances.... Respondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature.

*Williamson,* 473 U.S. at 194–97, 105 S.Ct. at 3121–22 (citations omitted) (footnotes omitted) (emphasis added).

■ California law permits a property owner to bring an inverse condemnation action to obtain just compensation for an alleged taking of property. *See* Cal.Code Civ.P. § 1245.260 (1982).[4] Under California Code of Civil Procedure section 1235.170, " 'property' [for purposes of eminent domain and inverse condemnation] includes real and personal property and any interest therein." *Baldwin Park Redevelopment Agency v. Irving,* 156 Cal.App.3d 428, 435, 202 Cal.Rptr. 792 (1984); *McMahan's of Santa Monica v. City of Santa Monica,* 146 Cal.App.3d 683, 700, 194 Cal.Rptr. 582, 592–93 (1983). California's definition of property includes all of the property interests Cassettari claims were taken by the County. If the County did indeed take these property interests from Cassettari without payment, just compensation can be obtained by using California's inverse condemnation procedures. Thus, an adequate

state compensation procedure is available to Cassettari. Until Cassettari uses this procedure, his taking claim is premature. *Williamson,* 473 U.S. at 196–97, 105 S.Ct. at 3122; *accord Four Seasons Apartment v. City of Mayfield Heights,* 775 F.2d 150, 151–52 (6th Cir.1985) (taking claim defeated by *Williamson* ). We conclude that the district court did not err in dismissing Cassettari's fifth amendment taking claim.

**B.  *The Section 1983 Claim***

"In any section 1983 action, the first question is whether section 1983 is the appropriate avenue to remedy the alleged wrong." *Haygood v. Younger,* 769 F.2d 1350, 1353 (9th Cir.1985) (en banc), *cert. denied,* 106 S.Ct. 3333 (1986). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a federal right by a person acting under color of state law." [5] *Dooley v. Reiss,* 736 F.2d 1392, 1394 (9th Cir.1984) (footnote omitted), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984); *see also Gibson,* 781 F.2d at 1338; *Haygood,* 769 F.2d at 1354. Cassettari argues he was deprived of federal rights by the taking of his property without just compensation and by the denial of pre-taking process.

*1.  Pre-Taking Process*

■ Cassettari contends that the County did not give him notice, an opportunity to be heard, nor pre-taking compensation prior to the alleged taking. The Constitution, however, does not require a state to provide pre-taking notice, an opportunity to be heard, or pre-taking compensation. "[T]he

---

**4.** That section provides in part:

(a) If a public entity has adopted a resolution of necessity but has not commenced an eminent domain proceeding to acquire the property within six months after the date of adoption of the resolution, or has commenced such proceeding but has not within six months after the commencement of such proceeding attempted diligently to serve the complaint and the summons relating to such proceeding, the property owner may, by an action in inverse condemnation, do either or both of the following:

(1) Require the public entity to take the property and pay compensation therefor.

(2) Recover damages from the public entity for any interference with the possession and

use of the property resulting from adoption of the resolution.

**5.** If these requirements are satisfied the County is an appropriate section 1983 defendant. As the Supreme Court stated in *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978): "Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (footnote omitted).

Just Compensation Clause has never been held to require pre-taking process or compensation." *Williamson*, 473 U.S. at 196–97, n. 14, 105 S.Ct. at 3122, n. 14 (citation omitted). No federal statute requires such pre-taking process or compensation. Thus, Cassettari's allegations that the County failed to give him notice, an opportunity to be heard, or pre-taking compensation, even if taken as true, do not allege the violation of a federal right and are insufficient to support a section 1983 claim. *Id.; see Four Seasons Apartment*, 775 F.2d at 152.

### 2. *Section 1983 Taking Claim*

As we stated in our discussion of Cassettari's fifth amendment taking claim, there is no constitutional prohibition against governmental takings of private property, only against takings without just compensation. Because Cassettari has not sought and been denied just compensation for the taking under the state's available procedures, he has not alleged a deprivation of a constitutional right. *Williamson*, 473 U.S. at 196–97, 105 S.Ct. at 3122.

Cassettari argues that requiring him to make use of available state procedures for obtaining just compensation conflicts with section 1983 cases which do not require exhaustion of state remedies. We disagree. "[B]ecause the Fifth Amendment proscribes takings *without just compensation*, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." *Id.* at 3121, n. 13 (emphasis in original). Cassettari's case is significantly different from section 1983 cases in which the deprivation of a federal right occurs regardless of the availability of a state remedy. *See, e.g., Clark v. Yosemite Community College District*, 785 F.2d 781, 790–91 (9th Cir.1986) (plaintiff deprived of right of association by defendant's acts regardless of outcome of state administrative remedy procedures, and so

may bring section 1983 claim); *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir.1986) ("Because the substantive due process is violated at the moment the harm [police brutality] occurs, existence of a post-deprivation state remedy should not have any bearing on whether a cause of action exists under § 1983."); *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir.1985) (section 1983 claim not barred by existence of state remedies where plaintiff deprived of fourth amendment right to be free from unreasonable seizure involving excessive force).

In the case now before us, Cassettari contends his property was taken by the state and that the state denied him just compensation. But that has not happened yet. A state procedure exists by which Cassettari can seek just compensation. Until he has availed himself of the state procedure, and has been denied just compensation, he has not been deprived of any right secured by the Constitution or federal statutes and he cannot state a claim for which relief can be granted under 42 U.S.C. § 1983. *Williamson*, 473 U.S. at 194, n. 13, 105 S.Ct. at 2121, n. 13.[6]

### C. *The Conspiracy Claim*

■ Cassettari's conspiracy claim, brought under 42 U.S.C. § 1985(3), in which he alleges the defendants conspired to violate his section 1983 rights, was also properly dismissed. The conspiracy claim was based solely upon allegations which we have concluded were insufficient to state a claim for deprivation of a federal right under section 1983. The insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations. *See Dooley*, 736 F.2d at 1395 (absence of section 1983 deprivation implies failure to state conspiracy claim). Moreover, the record in this case reflects that Cassettari has not, and cannot, allege a required element of a section 1985 conspiracy claim: that the defendants were "motivated by a 'class-

---

**6.** "Because no deprivation of a federal right, as encompassed by section 1983, is alleged, we do not reach the question whether any of defend-

ants acted under color of state law." *Dooley*, 736 F.2d at 1395.

based, invidiously discriminatory animus.' " *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)); *Briley v. California,* 564 F.2d 849, 859 (9th Cir.1977).

## CONCLUSION

Cassettari's fifth amendment and section 1983 claims were properly dismissed, as was his section 1985(3) conspiracy claim.[7] Cassettari's request for attorney fees under 42 U.S.C. § 1988 was properly denied as he was not a prevailing party.

AFFIRMED.

---

7. Cassettari also argues that when the County took his property without paying him for it, the County violated his fourth amendment right to be secure against unreasonable seizures. This argument is without merit. A claim for the taking by a state of private property for public use without just compensation is properly asserted under the fifth and fourteenth amendments. *E.g., Williamson,* 473 U.S. at 175, n. 1, 105 S.Ct. at 3111, n. 1.