**Jorge LECHUGA; et al., Plaintiff,**

v.

**Virlena CROSLEY, Director of the Oregon Employment Department, in her official and personal capacity, Defendant.**

**No. CIV.01–450–AS.**

United States District Court,
D. Oregon.

Jan. 10, 2002.

Janice R. Morgan, Leslie N. Kay, Legal Aid Services of Oregon, Hillsboro, OR, Kent B. Thurber, Davis Wright Tremaine, Portland, OR, Sandra A. Hansberger, Lewis & Clark Legal Clinic, Portland, OR, for Plaintiff.

Elizabeth Morley Large, Stephen K. Bushong, Oregon Department of Justice, Salem, OR, for Defendant.

## ORDER

ROBERT E. JONES, District Judge.

Magistrate Judge Donald C. Ashmanskas filed Findings and Recommendation (# 29) on November 15, 2001, in the above entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Plaintiffs have timely filed objections and a supplement to plaintiffs' objections. I have, therefore, given *de novo* review of Magistrate Judge Ashmanskas's rulings.

I find no error. Accordingly, I ADOPT Magistrate Judge Ashmanksas's Findings and Recommendation (# 29) dated November 14, 2001, in its entirety. Defendant's motion to dismiss (# 11) for failure to state a claim is GRANTED. This action is dismissed.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

ASHMANSKAS, United States Magistrate Judge.

The plaintiffs in this case, Jorge Lechuga and Juan Yanez ("Plaintiffs") are mon-

olingual Spanish speaking residents who have applied for unemployment insurance benefits with the Oregon Employment Department (the "Department"). Plaintiffs allege that the administration of the federally funded unemployment insurance program (the "Program") has a disparate impact on the basis of race, color and/or national origin in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*)(the "Act") and 29 C.F.R. § 31.3.[1]

Plaintiffs bring their sole claim under 42 U.S.C. § 1983 (Section 1983) against Virlena Crosley, Director of the Department ("Defendant"), seeking a declaration that "defendant's actions and inactions, including failure to provide forms, correspondence, decisions and other documents in languages other than English, failure to provide adequate translation and interpretation services, and failure to adequately investigate claims of non-English speaking applicants violate their rights under [the Act] and its regulations, as enforced through 42 U.S.C. § 1983." Plaintiffs also seek an injunction prohibiting defendants from "continuing to violate [the Act] and ordering defendants to improve services to Spanish speaking clients, including but not limited to translating applications, notices, decisions and other form documents." Plaintiffs do not claim that they suffered intentional discrimination and they do not seek money damages.

Defendant filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) asserting that Plaintiffs have failed to state a claim upon which relief can be granted. Defendant argues that the Act does not confer substantive rights to be free from disparate impact discrimination and cannot be construed to provide program-specific rights enforceable under Section 1983. Alternatively, Defendant argues that if the court finds that Plaintiffs have stated a claim under Section 1983, such claim is preempted by the Act.

## LEGAL STANDARD

Courts grant motions to dismiss under Rule 12(b)(6) only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. County of Nevada*, 824 F.2d 735, 737 (9th Cir.1987).

## DISCUSSION

The question before the court is whether the regulations adopted by the Department of Labor pursuant to Section 602 of the Act create federal rights that are enforceable by an individual through Section 1983. The parties agree that the test enunciated by the United States Supreme Court in *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) controls this action.

---

**1.** 29 C.F.R. § 31.3 provides:

A recipient, in determining the types of services, financial aid, or other benefits, or facilities which will be provided under any such program, or the classes of individuals to whom, or the situations in which, such services, financial aid, other benefits, or facilities will be provided under any such program or the class of individuals to be afforded an opportunity to participate in any such program, may not, directly or through contractual or other arrangements, utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of race, color or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program as respects individuals of a particular race, color, or national origin.

In *Blessing,* the Court faced the question of whether mothers, whose children were eligible for state child support services, could pursue a Section 1983 action against the state for failure to provide services required under Title IV–D of the Social Security Act. To qualify for federal funds, the state was required to operate a program that conformed with federal guidelines, as set forth in Title IV–D. The Court engaged in a two-step analysis: 1) Did Title IV–D create a federal right; and 2) Did Congress foreclose the enforcement of such right under Section 1983.

The Supreme Court explained the appropriate analysis as follows:

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." We have held that this provision safeguards certain rights conferred by federal statutes. In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal ***right,*** not merely a violation of federal ***law.*** We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. Because our inquiry focuses on congressional intent, dismissal is proper if Congress "specifically foreclosed a remedy under § 1983." Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.

*Id.* at 340–41, 117 S.Ct. 1353 (emphasis in original) (citations omitted).

The Court looked to Title IV–D and the statute relied on by plaintiffs to determine whether they were enacted with the purpose of benefitting individual children and custodial parents. Plaintiffs sought to enforce the statutory requirement that states substantially comply with the requirements of Title IV–D or be penalized with a five percent reduction in its federal grant. The Secretary of the Department of Health and Human Service adopted a regulation which defined "substantial compliance" as requiring specific percentages of compliance in designated areas. The Court held that the requirement that states substantially comply with Title IV–D and the regulations defining the compliance standards were not intended to benefit individuals and, therefore, did not create a federal right. "Far from creating an ***individual*** entitlement to services, the standard is simply a yardstick for the Secretary to measure the ***systemwide*** performance of a State's Title IV–D program." *Id.* at 343, 117 S.Ct. 1353 (emphasis in original).

The court noted that even when a state was in substantial compliance with Title IV–D requirement, certain individuals needs were still not being met and that the Secretary was limited to reducing a grant by five percent and had no authority to "command the State to take any particular action or provide services to certain indi-

viduals." *Id.* at 344, 117 S.Ct. 1353. "These provisions may ultimately benefit individuals who are eligible for Title IV–D services, but only indirectly." *Id.*

Recently, the United States Supreme Court considered whether an individual could pursue a private right of action for disparate impact discrimination under a Title VI regulation. In *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001),[2] an individual plaintiff challenged the state's practice of administering its driver's license examination only in the English language as violating the regulation forbidding state agencies receiving funding under Title VI from utilizing "criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national religion* * *." Id. at 1515, (quoting 28 C.F.R. § 42.104(b)(2)).

Initially, the Court acknowledged its prior holdings that an individual may pursue an action under Section 601[3] of Title VI and obtain both injunctive relief and damages but that such action is limited to claims of intentional discrimination. It extended the intentional discrimination limitation to actions brought to enforce regulations enacted under Section 601 reasoning that if Congress did not intend Section 601 to prohibit disparate impact discrimination, it clearly could not intend for the implementing regulations to extend beyond intentional discrimination. *Id.* at 1518. Finally, the court assumed, "for purposes of deciding this case that regulations promulgated under § 602[4] of Title VI may validly

---

**2.** Prior to the United States Supreme Court's ruling in *Alexander v. Sandoval*, commentators were split on whether an individual could use Section 1983 to pursue a private right of action for disparate impact under a Title VI regulation. "Using § 1983 to Enforce Title VI's Section 602 Regulations," 49 U.Kan. L.Rev. 321 (January 2001); "The Intended Relationship between Administrative Regulations and Section 1983's Laws," 67 Geo. Wash.L.Rev. 51 (November 1998). Despite the well-reasoned arguments of these law review articles, the court finds that the reasoning of the Court in *Alexander* effectively resolves the dispute.

**3.** Section 601 provides:
No person in the United States shall, on the ground of race, color, or national origin, be excluded form participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**4.** Section 602 provides:
Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 601 with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. No such rule, regulation, or order shall become effective unless and until approved by the President. Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secure by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with a requirement imposed pursuant to this section, the head of the Federal

proscribe activities that have a disparate impact on racial groups, even though such activities are permissible under § 601." Based upon these premises and assumptions, the Court then proceeded to address the question of whether Section 602 independently provided the right to pursue an action for disparate treatment discrimination. *Id.* at 1517.

The primary task before the Court was to determine whether Congress intended to create not just a private right but also a private remedy when it enacted Section 602. The Court compared the language of Section 602, which authorizes federal agencies to effectuate the provisions of Section 601 by issuing rules, regulations or orders of general applicability, with the "rights-creating" language of Section 601, which specifically decrees that "[n]o person * * * shall * * * be subjected to discrimination" and found that Section 602 clearly lacked any indication of an intent to create private rights independent of Section 601.

> Far from displaying congressional intent to create new rights, § 602 limits agencies to "effectuat[ing]" rights already created by § 601. And the focus of § 602 is twice removed from the individuals who will ultimately benefit from Title VI's protection. Statutes that focus on the person regulated rather than the individuals protected create "no implication of an intent to confer rights on a particular class of persons." Section 602 is yet a step further removed: it focuses neither on the individuals protected nor even on the funding recipients being regulated, but on the agencies that will do the regulating. * * * [§ ] 602 is "phrased as a directive to federal agencies engaged in the distribution of public funds." When this is true,

"[t]here [is] far less reason to infer a private remedy in favor of individual persons. So far as we can tell, this authorizing portion of § 602 reveals no congressional intent to create a private right of action".

*Id.* at 1521. This finding was supported by the "power given the agencies to enforce their regulations by terminating funding to a particular program, or part thereof," that has violated the regulation or "by any other means authorized by law." "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others". *Id.* at 1521–22.

The court then rejected the argument that the regulations themselves contained "rights-creating" language and were independently privately enforceable.

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

*Id.* at 1522. Based on this reasoning, the Court found that Title VI does not evidence congressional intent to create a private right of action based on regulations enacted under Section 602 and that such right of action does not exist. *Id.* at 1523.

department or agency shall file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the

circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report.

While the issue in *Sandoval* was whether Section 602 and its implementing regulations created an independent private right of action, this court finds the reasoning of the Supreme Court in that case relevant to the issues at hand. The *Blessing* test requires a finding that Congress intended the statute or regulation to benefit the individual filing the Section 1983 action. In *Sandoval*, the Court held that Section 602, which authorized agencies to regulate the States compliance with Section 601, evidenced no intent to benefit any particular class of persons. This finding is equally applicable to the question of intent to benefit individual required by the *Blessing* test.

The lesson taught by *Blessing* on the issue of whether regulations defining compliance standards create a federal right is relevant here. The regulation adopted pursuant to Section 602 merely provided the agencies with standards against which to judge the states' compliance under Section 601 in determining whether funding should be restricted. The regulation was not specifically intended to benefit individuals and, therefore, did not create a federal right enforceable by individuals.

The court finds that Plaintiffs have failed to establish that Congress intended to create a federal right for the benefit of Plaintiffs either through Section 602 or the regulation adopted thereunder. Plaintiffs have no federal right upon which to base their Section 1983 claim and this action should be dismissed.

### CONCLUSION

Defendant's motion (11) to dismiss for failure to state a claim should be GRANTED.

### SCHEDULING

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due November 29, 2001. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due December 13, 2001, and the review of the Findings and Recommendation will go under advisement on that date.