James **HOLMAN** dba Holman Property Investments, Plaintiff,

v.

**CITY OF WARRENTON,** Alan Johansson, and Dick Pearson, Defendants.

No. CV 01–1310–BR.

United States District Court, D. Oregon.

Sept. 25, 2002.

Blair J. Henningsgaard, Astoria, for Plaintiff.

Michael A. Lehner, Lehner, Mitchell, Rodrigues & Sears, Portland, for Defendants.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment (# 8) and Plaintiff's Motion for Summary Judgment (# 12) as to certain claims.

Plaintiff asserts a civil rights claim under 42 U.S.C. § 1983 arising from Defendants' conduct in responding to Plaintiff's efforts to obtain a building permit to develop certain property within the City of Warrenton. Plaintiff alleges Defendants' conduct violated Plaintiff's procedural due process and substantive due process rights under the Fourteenth Amendment to the United States Constitution. Plaintiff also alleges Defendants' conduct was an uncompensated taking of Plaintiff's private property in violation of the Fifth Amendment to the United States Constitution and Article I, Section 18 of the Oregon Constitution.

Defendants move the Court to enter summary judgment in their favor on all of Plaintiff's claims. Plaintiff, in turn, moves the Court to grant summary judgment in his favor on his substantive and procedural due process claims. On August 12, 2002, the Court heard oral argument on the parties' cross-motions for summary judgment.

For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the portion of Plaintiff's claims that seek damages for attorneys' fees incurred in the mandamus proceeding in state court. The Court also **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's substantive due process claim and **DISMISSES** that claim **with prejudice**. In addition, the Court **DENIES as moot** Defendants' Motion for Summary Judgment as to Plaintiff's Fifth Amendment claim because Plaintiff voluntarily withdrew that claim and **DENIES** the remainder of Defendants' Motion.

The Court also **GRANTS** Plaintiff's Motion for Summary Judgment as to the procedural due process claim against Defendants Johansson and Pearson and awards Plaintiff $30,408 in damages. The Court **DENIES** the remainder of Plaintiff's Motion.

## FACTUAL BACKGROUND

The following facts are undisputed:

Plaintiff is the owner of approximately .84 acres of real property (Property) within the City of Warrenton, Oregon (City). The Property is located in the middle of the downtown area of the City and is classified as General Commercial (C–1) pursuant to City Planning Ordinances. The operation of a mini-storage facility is a "conditional use" within a C–1 zone. A conditional use of property zoned as C–1 is not approved automatically, but it may be allowed if the City Planning Commission determines certain criteria and all City ordinances would be met by a proposed plan.

In the fall of 1999, Plaintiff applied to the Planning Commission for a conditional use permit to construct a mini-storage facility. The facility consisted of three separate buildings, one of which fronted Market Street. Plaintiff submitted drawings with the application that showed access through garage doors to the storage units along Market Street. The application, however, indicated Plaintiff was not requesting vehicular access to the units from Market Street. In particular, Plaintiff stated in the application:

The site layout has been designed with access from the North end of Water Street only. No access is requested from Harbor Street, Skipanon Drive, or Market Street. This layout should eliminate any potential bottlenecks created by vehicles slowing or stopping for the purposes of ingress to or egress from the proposed use.

Defendant Dick Pearson was a City Planner when Plaintiff submitted his application for a conditional use permit. Pearson reviewed the application and drafted a Staff Report to the Planning Commission regarding the proposed use. Pearson concluded the proposed use would not generate excessive traffic, especially compared to the amount of traffic generated by uses permitted outright in a C–1 zone. He noted the adjacent streets had the capacity to accommodate the traffic that would be generated by the mini-storage facility. Pearson also stated in the Staff Report that "[m]ini-storage units must comply with access and parking standards in Section 7.080 through 7.083." These ordinances required 17 off-street parking spaces for the Property. The proposed plan, however, failed to show any off-street parking spaces for the storage units. Nonetheless, Pearson concluded:

The site has an adequate area to accommodate the proposed use. The site layout has been designed to provide for appropriate access points, on-site drives, public areas, loading areas and other facilities required by city ordinances.

Pearson recommended the Planning Commission approve Plaintiff's application for a conditional use permit.

On November 10, 1999, the Planning Commission held a public hearing on Plaintiff's application. During the hearing, one of the commissioners questioned Plaintiff about access to the units on Market Street. Plaintiff informed the Planning Commission that the garage doors to those units would face Market Street. Plaintiff explained customers would access those units by parking on Market Street and using a sidewalk between the street and the units to unload their belongings. Plaintiff stated he would not build a ramp, and, therefore, no vehicles would be able to drive into the units from Market Street. Plaintiff acknowledged, however, he was "sure some of those people will park on Market Street."

The Planning Commission approved the motion to grant Plaintiff's application for a conditional use permit by oral vote after the public hearing. On November 15, 1999, the Planning Commission recorded a written Notice and Order formally approving Plaintiff's request for a conditional use permit. The Planning Commission's decision was not appealed within the time allotted for such an appeal, and the decision became final.

The Mayor of Warrenton, the Warrenton City Commission, and many citizens were unhappy with Plaintiff's plans to build mini-storage units on the Property, which was one of the last undeveloped pieces of land in the core downtown area. Members of the City Commission publicly criticized the Planning Commission's approval of the use.

On February 22, 2000, Plaintiff submitted an application to the City Building Code Department for a building permit to construct the mini-storage facility. Plaintiff attached to the application more detailed building plans for the project. There were no material differences between the plans Plaintiff originally submitted to the Planning Commission for the conditional use permit and the plans Plaintiff submitted to the Building Code Department for the building permit. In particular, both plans showed storage units that fronted Market Street with a sidewalk between the building and the street.

Building plans must comply with the state building and specialty codes and all City ordinances before a building permit may be issued. To determine whether building plans comply with City ordinances, the application is sent to various department heads who indicate compliance on a routing slip. Pearson received the routing slip on behalf of the Planning Department. Pearson initially indicated on the slip that Plaintiff's request for "conditional use [was] approved by Planning Commission 11–10–99 in the layout and design as shown."

At some later date, however, Defendant Alan Johansson, the City Engineer and head of the Public Works Department, reviewed the routing slip and Plaintiff's application for a building permit. Johansson was concerned that access to the units from Market Street might violate general City ordinances regarding safe use of streets. Johansson contacted Pearson to discuss Plaintiff's proposed use of the Property. Johansson told Pearson that Pearson could not approve the use because the plan enabled Plaintiff's customers to access some of the units directly from Market Street. Johansson did not refer to any particular provision of the City ordinances that the proposed use might violate. At that point, Pearson realized for the first time that there might be an "off-street parking, loading, maneuvering room problem" with the proposed use. Although Pearson had attended the hearing before the Planning Commission on Plaintiff's application for a conditional use permit and heard the discussion regarding access to units along the Market Street side of the Property, he did not make the appropriate "connections" at that time. After talking to Johansson, Pearson reviewed the parking lot standards and off-street parking sections of the City ordinances. On March 23, 2000, Pearson sent Plaintiff a letter that indicated Plaintiff would have to redesign his project to comply with the City's off-street parking ordinances. Pearson stated:

> It is my opinion that access to serve commercial uses must be off-street and that the City does not permit maneuvering and loading to occur on the public road right of way.

As a result of Pearson's refusal to "sign off" on Plaintiff's application for a building permit, the Building Department could not and did not approve Plaintiff's application.

On March 28, 2000, Pearson sent a letter to the City Attorney requesting her opinion as to whether the Planning Commission's earlier approval of Plaintiff's application for a conditional use permit prohibited the City from requiring Plaintiff to comply with the City's zoning ordinances. On March 30, 2000, the City Attorney advised Pearson that the Planning Commission did not waive its right to require compliance with zoning ordinances when it approved Plaintiff's application for the conditional use permit. The City Attorney also advised Pearson that Plaintiff could proceed with the proposed use only if he requested and received from the Planning Commission a variance from the zoning requirement.

In response to Defendants' failure to issue the building permit, Plaintiff met with Pearson to discuss the project. Plaintiff proposed changes to the plan that included redesigning the facility so that only smaller units faced Market Street. Pearson still refused to approve the building permit. Eventually Plaintiff met with Johansson to discuss the project. The parties discussed the possibility of constructing a fence around the property to prevent access from Market Street. At that point, Johansson informed Plaintiff that he would not receive a building permit even if he fenced the property.

Based on this conversation, Plaintiff believed the City would not issue a building

permit to him under any circumstances. Plaintiff, therefore, filed a Petition for Writ of Mandamus in Clatsop County Circuit Court. The court held a bench trial on June 23, 2000. On July 9, 2000, the court issued a letter opinion in which it determined the City could not change its original approval of a conditional use permit after it had completed the land use process and issued its Notice and Order. In particular, the court held after the land use process was completed, the City's land use review of the building permit changed from a "discretionary decision to a ministerial function" of confirming the final plans complied with the plans previously approved by the City. The court, therefore, ordered the City to approve Plaintiff's building permit to the extent it complied with the land use permit previously granted by the Planning Commission.

Plaintiff did not file an administrative appeal of the City's decision to withhold his building permit because he believed his state court mandamus proceeding constituted an appeal of the City's decision. In any event, Plaintiff would not have appealed the decision administratively even if he had believed he could do so.

As a result of Defendants' failure to grant Plaintiff a building permit, construction of Plaintiff's mini-storage facility was delayed for four months, and Plaintiff suffered lost profits of $30,208. In addition, Plaintiff incurred attorneys' fees in the amount of $4,600 during the pendency of the mandamus proceedings.

### STANDARDS

Fed.R.Civ.P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001). In response to a properly-supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Guidroz–Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir.2001) (internal quotation and citation omitted). All reasonable inferences from the facts in the record must be drawn in favor of the nonmoving party. *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust*, 258 F.3d 986, 999 (9th Cir.2001), *cert. denied*, 534 U.S. 1082, 122 S.Ct. 815, 151 L.Ed.2d 699 (2002). A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir.1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir.1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin*, 261 F.3d at 919.

### DISCUSSION

As noted, Defendants move the Court to enter summary judgment in their favor on all of Plaintiff's claims. Plaintiff moves the Court to enter summary judgment in his favor on his substantive and procedural due process claims.

## I. Defendants' Motion for Summary Judgment on Plaintiff's Fifth Amendment Takings Claim

Defendants move for summary judgment on Plaintiff's claim for alleged violations of his Fifth Amendment rights on the ground that the federal takings claim is not ripe for adjudication. During oral argument, Plaintiff withdrew his Fifth Amendment takings claim. The Court, therefore, denies as moot Defendants' Motion for Summary Judgment on Plaintiff's Fifth Amendment claim.

## II. Defendants' Motion for Summary Judgment on All Remaining Claims on *Res Judicata*/Claim Preclusion Grounds

 28 U.S.C. § 1738 requires federal courts to give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered. *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir.1994), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). The Oregon Supreme Court has described its claim preclusion doctrine as follows:

> We start with the general rule, well established in this state, that a plaintiff who has prosecuted one action against a defendant through to final judgment binding on the parties is barred on *res judicata* grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.

*Rennie v. Freeway Transport*, 294 Or. 319, 323, 656 P.2d 919 (1982). Claim preclusion bars both the relitigation of claims and the prosecution of claims that could have been, but were not, litigated in the previous action. *Dean v. Exotic Veneers, Inc.*, 271 Or. 188, 194, 531 P.2d 266 (1975). Thus, a "plaintiff must seek and exhaust all alternative theories for recovery in one action" in order to avoid the risk of subsequent claim preclusion. *Id.*

Plaintiff apparently concedes his claims in this action are based on the same factual transaction at issue in the mandamus proceeding and he seeks an additional or alternative remedy to the writ of mandamus that he previously obtained. Plaintiff, however, contends claim preclusion does not bar his § 1983 claims because he could not have raised those claims during the mandamus proceeding.

Defendants assert Plaintiff could have brought his constitutional claims for damages in the mandamus proceeding because Or.Rev.Stat. § 34.210 explicitly provides a damages remedy to a relator in a mandamus proceeding. That statute provides in part:

> If the court orders issuance of a peremptory writ of mandamus, the relator shall recover from the defendant damages which the relator has sustained from a false return, to be ascertained in the same manner as in an action.

In addition, Defendants argue Plaintiff could have joined his constitutional claims for damages in the mandamus proceeding pursuant to the permissive joinder rules of the Oregon Rules of Civil Procedure. The relationship between § 34.210 and the Oregon Rules of Civil Procedure is, however, a complex one.

In *State ex rel. The Kashmir Corp. v. Schmidt*, the Oregon Supreme Court interpreted the meaning of a prior version of Or.Rev.Stat. § 34.210. 291 Or. 603, 633 P.2d 791 (1981). The plaintiff, a corporation engaged in the business of developing subdivision housing projects, brought an action against the City of Salem and the Street Inspector and Construction Manag-

er for the City of Salem. *Id.* at 605, 633 P.2d 791. The City of Salem initially approved plaintiff's construction plans for the subdivision. *Id.* After construction was underway, defendants issued a stop work order, and plaintiff halted construction. *Id.* The plaintiff petitioned the Circuit Court for Marion County for a writ of mandamus. *Id.* In its petition, the plaintiff also asked for a judgment of damages pursuant to former § 34.210. *Id.* At that time, § 34.210 provided in part, "If judgement [*sic*.] is given for the plaintiff, he shall recover damages which he has sustained by reason of the premises. . . ." The trial court ruled the City of Salem's former approval of the plaintiff's construction plans gave the plaintiff a vested right to proceed with construction pursuant to those plans. *Id.* at 606, 633 P.2d 791. The court, therefore, issued a peremptory writ ordering the defendants to allow the plaintiff to resume construction. *Id.* The court continued trial on the damages issue until a later date. *Id.* In a supplemental pleading, the plaintiff alleged its work was delayed for 39 days by the stop work order. *Id.* After a trial on the merits, the court found the defendants were protected by governmental immunity and denied plaintiff's damages claim. *Id.* at 606–07, 633 P.2d 791. The plaintiff appealed.

On appeal, the plaintiff argued the trial court necessarily concluded the plaintiff had established its substantive right to recover damages for the delay under § 34.210 by deciding to issue the peremptory writ. *Id.* at 607, 633 P.2d 791. The defendants, on the other hand, argued § 34.210 was merely a procedural statute that allowed a trial court to combine trial on the *mandamus* question with trial on the question of damages rather than forcing plaintiff to initiate a separate action for damages. *Id.*

After examining the history of mandamus proceedings, the Oregon Supreme Court rejected both arguments. *Id.* at 608–15, 633 P.2d 791. The court first noted mandamus was a completely independent proceeding under English common law with no connection to actions for damages. *Id.* at 608–10, 633 P.2d 791. A mandamus proceeding involved only two documents: the plaintiff/relator's alternative writ and the defendant's return of the writ. *Id.* at 609, 633 P.2d 791. A plaintiff/relator, therefore, could challenge a defendant's factually false return of the alternative writ by filing an independent action on the basis of the false return only after the court rendered judgment against him. *Id.* This common law rule later was amended in England by the Statute of Anne. *Id.* at 609–10, 633 P.2d 791.

The Statute of Anne provided a plaintiff/relator could combine his action for a false return of the writ with the original mandamus proceeding. *Id.* at 611, 633 P.2d 791. The Oregon Supreme Court noted the only effect of the Statute of Anne was "the procedural consolidation" of these two particular actions, but the statute did not allow the relator to join other causes of action with the mandamus proceeding. *Id.* at 612, 633 P.2d 791. The court then pointed out the Oregon mandamus statutes mirrored the language of the Statute of Anne. *Id.* at 612–13, 633 P.2d 791. The court, therefore, concluded a plaintiff/relator could "recover as damages in a proceeding for a writ of mandamus only those damages which he could have recovered in his common law action for false return" and could not recover other damages such as those "that stem from the defendant's actions which gave rise to the action for mandamus." *Id.* at 614–15, 633 P.2d 791. Accordingly, the Oregon Supreme Court held the plaintiff's claim for damages for the 39–day delay in its construction of the subdivision did not lie in a mandamus proceeding and affirmed the

circuit court's denial of those damages. *Id.* at 616, 633 P.2d 791.

The Oregon legislature has amended Or. Rev.Stat. § 34.210 only once since the *Schmidt* decision. The amendment, which provides the plaintiff/relator "shall recover from the defendant damages which the relator has sustained from a false return," does not affect the Oregon Supreme Court's holding in Schmidt. In fact, the amendment seems to confirm the *Schmidt* court's earlier interpretation of the statute: that is, the legislature intended a relator to recover only damages for a false return of the writ in a mandamus proceeding rather than all damages arising from the underlying cause of action.

■ Nonetheless, Defendants here contend Oregon Rule of Civil Procedure 24A allowed Plaintiff to join his damages claim to the mandamus proceeding notwithstanding the limitations of the mandamus statute and the Oregon Supreme Court's holding in *Schmidt.* ORCP 24A provides a "plaintiff may join in a complaint, either as independent or as alternate claims, as many claims, legal or equitable, as the plaintiff has against an opposing party." The *Schmidt* court could not have addressed the effect of the Oregon Rules of Civil Procedure on the joinder of damages claims in a mandamus proceeding because the underlying mandamus proceeding took place in 1979 before the rules became effective on January 1, 1980. ORCP 1A provides the rules govern procedure and practice for all civil actions and special proceedings except when "a different procedure is specified by statute or rule." Under Oregon law, when the Oregon Supreme Court interprets a statute, "that interpretation becomes a part of the statute as if written into it at the time of its enactment." *Walther v. SAIF Corp.,* 312 Or. 147, 149, 817 P.2d 292 (1991). This Court finds § 34.210 as interpreted by the Oregon Supreme Court in *Schmidt* speci-

fies a different procedure for mandamus proceedings than Rule 24A and provides an exception to the general rule of permissive joinder of claims.

■ Plaintiff here asserts claims for two types of damages: lost profits of $30,208 as a result of the four-month delay in Plaintiff's construction of the mini-storage facility and $4,600 in attorneys' fees incurred during the mandamus proceeding. Plaintiff's claims for attorneys' fees could have been brought in the mandamus proceeding. Or.Rev.Stat. § 34.210(2) provides the court "in its discretion may designate a prevailing party and award attorney fees, costs and disbursements to the prevailing party." In fact, Plaintiff's counsel admitted during oral argument that Plaintiff sought an award of attorneys' fees during the mandamus proceeding, but the court denied that request. This Court, therefore, concludes Plaintiff's claim for attorneys' fees incurred during the mandamus proceeding is barred by the claim preclusion doctrine.

■ Pursuant to § 34.210 and the Oregon Supreme Court's holding in *Schmidt,* however, this Court finds Plaintiff could not have pursued his claim for lost profits during the mandamus proceeding under any theory because those damages arose from the conduct of Defendants that gave rise to the mandamus proceeding rather than from a false return of the writ during the mandamus proceeding. Accordingly, the Court concludes Plaintiff's claim for lost profits is not barred by the claim preclusion doctrine.

### III. Parties' Cross–Motions for Summary Judgment on Plaintiff's Fourteenth Amendment Substantive Due Process Claim

■ The Fourteenth Amendment protects persons from government action that is "clearly arbitrary and unreason-

able, having no substantial relation to the public health, safety, morals, or general welfare." *Patel v. Penman,* 103 F.3d 868, 874 (9th Cir.1996), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997). The Fourteenth Amendment's substantive due process requirements, however, are preempted when "a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior." *Albright v. Oliver,* 510 U.S. 266, 273–74, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In other words, if a particular amendment places limits on the type of government conduct challenged by a plaintiff, that amendment rather than "the more generalized notion of substantive due process" must guide the court's analysis of the plaintiff's claim. *Armendariz v. Penman,* 75 F.3d 1311, 1319–20 (9th Cir.1996). A court "may not expand the constitutional protections afforded by the Bill of Rights in those areas specifically addressed by the first eight amendments" through application of the substantive due process clause. *Id.* at 1325. Substantive due process analysis "has no place in contexts already addressed by explicit textual provisions of constitutional protection, regardless of whether the plaintiff's claims under those amendments have merit." *Id.* at 1325–26.

■ Defendants contend Plaintiff's substantive due process claim is preempted because his allegations are addressed specifically by the Fifth Amendment's prohibition on the taking of real property without just compensation. Defendants rely on *Patel* to support their argument.

In *Patel,* the plaintiffs were motel owners who alleged the defendants City of San Bernardino and various city officials violated the plaintiffs' substantive due process rights by engaging in a course of conduct aimed at driving them out of business. 103 F.3d at 874. In particular, the defen-

dants closed the plaintiffs' motel and refused to grant the building permits that plaintiffs needed to make repairs to cure certain code violations and to enable the plaintiffs to reopen the motel. *Id.* The Ninth Circuit held the challenged government conduct was encompassed by the Fifth Amendment's Takings Clause, and, therefore, the plaintiffs' substantive due process claims were preempted by that provision. *Id.* at 875. *See also Armendariz,* 75 F.3d at 1320–24 (allegations that defendants engaged in a scheme to drive down the market value of the properties or to cause foreclosures so that a shopping-center developer could buy the property at a lower price by evicting tenants, depriving plaintiffs of rental income, preventing owners from learning which repairs were necessary to comply with city ordinances, and inventing new violations after plaintiffs made repairs could not form the basis of a substantive due process claim because the type of government conduct challenged gave rise to potential claims under the more specific provision of the Takings Clause).

Plaintiff argues *Patel* is distinguishable because Plaintiff's business was not closed due to code violations and he was always in full compliance with the City planning ordinances. The Court, however, finds this is a distinction without a substantive difference. Like the plaintiffs in *Patel,* Plaintiff asserts the City refused to grant his building permit without just cause even though he had a valid conditional use permit to operate the facility in the manner proposed. In both cases, it is the denial of a building permit without just cause and the concomitant interference with the plaintiffs' use of their property that is at the heart of the actions. The Court finds, therefore, the constitutionality of Defendants' conduct, which deprived Plaintiff of the previously-approved use of his real property, must be analyzed under the specific provision that pertains to this type of

deprivation: the Fifth Amendment Takings Clause.

Based on the foregoing, the Court concludes the Fifth Amendment Takings Clause provides specific limitations on the type of government conduct that Plaintiff challenges. Plaintiff's substantive due process claim, therefore, is preempted by the Takings Clause. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's substantive due process claim. The Court also denies Plaintiff's Motion for Summary Judgment on the substantive due process claim and dismisses the claim with prejudice.

## IV. Cross–Motions for Summary Judgment on Plaintiff's Fourteenth Amendment Procedural Due Process Claim

### A. Plaintiff's Claims Against Defendants Pearson and Johansson

The parties do not dispute the material facts. Each party, however, argues the undisputed facts establish he is entitled to summary judgment on Plaintiff's procedural due process claim as a matter of law. In the alternative, Defendants Pearson and Johansson contend they are entitled to summary judgment on Plaintiff's procedural due process claim because they are shielded by qualified immunity.

#### 1. Violation of Plaintiff's Fourteenth Amendment right to procedural due process

■ The Fourteenth Amendment protects individuals against governmental de-

privations of property without due process of law. To prevail on a claim for a procedural due process violation, the party must prove three elements: 1) a protectible liberty or property interest, 2) government deprivation of that interest, and 3) a denial of adequate procedural protections. *Foss v. Nat'l Marine Fisheries Serv.,* 161 F.3d 584, 588 (9th Cir.1998). Defendants contend Plaintiff's procedural due process claim fails because Plaintiff cannot establish any of these elements.[1] Plaintiff, on the other hand, contends he has established each element of this claim as a matter of law.

#### a. A Constitutionally–Protectible Property Interest

■ The property interests that the Fourteenth Amendment's procedural requirements protect " 'are not created by the Constitution[,] ... they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Newman v. Sathyavaglswaran,* 287 F.3d 786, 790 (9th Cir.2002) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The procedural due process clause protects only those property interests that a person has already acquired. *Id.* (quoting *Roth,* 408 U.S. at 576, 92 S.Ct. 2701). A person, however, may have a constitutionally-protectible interest in acquiring property not currently held if the person has a " 'legitimate claim of entitlement' " to the property. *Foss,* 161 F.3d

---

1. Defendants do not argue the Fifth Amendment preempts Plaintiff's procedural due process claim. The Court notes the *Armendariz* decision regarding the viability of substantive due process claims was issued on rehearing *en banc.* 75 F.3d 1311 (9th Cir.1996). That opinion did not disturb the three-judge panel's prior ruling in *Armendariz v. Penman,* 31 F.3d 860, 865–66 (9th Cir.1994), in which the court held the plaintiffs stated claims for violations of their procedural due process rights. *Armendariz,* 75 F.3d at 1316. The Ninth Circuit specifically held the portions of the panel decision regarding the procedural due process claims and the defendants' qualified immunity defenses to those claims "remain in place as the law of the circuit." *Id.*

at 588 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). A " 'unilateral expectation' or an 'abstract need or desire' " for the property is insufficient to confer a protectible property interest. *Id.*

During oral argument, Plaintiff explained his procedural due process claim is based on his constitutional right to develop the Property in a manner that is consistent with the already-approved conditional use permit. In other words, Plaintiff argues Defendants' actions constituted a *de facto* revocation of Plaintiff's previously-approved conditional use permit. Plaintiff also argues the previously-approved conditional use permit gave him a vested right in the issuance of a building permit that complied with the terms of the conditional use permit. Plaintiff contends Defendants' refusal to issue a building permit deprived him of that property interest.

Defendants have not addressed whether Plaintiff had a constitutionally-protectible property interest in the conditional use permit or a right to use his land in a manner consistent with that permit. Defendants argue, however, Plaintiff did not have an absolute right to the issuance of the building permit because Plaintiff's project did not meet the City's planning and zoning code requirements with respect to off-street parking. Defendants contend § 9.01.100.010 of the City Building Code required the "local building official with authority to withhold a permit" if it did not meet the requirements of any portion of the City Code. Defendants assert, therefore, Plaintiff did not have a constitutionally-protectible property interest in that permit.

Section 9.01.100.010 of the Warrenton Municipal Code provides:

> The application, plans, specifications, computations and other data filed by an applicant for a [building] permit shall be reviewable by the building official. Such plans may be reviewed by other depart-ments of this jurisdiction to verify compliance with any applicable laws under their jurisdiction. If the building official finds that the work described in application for a permit and the plans, specifications . and other data filed therewith conform to the requirements of this code *and other pertinent laws and ordinances,* and that the fees have been paid, the building official shall issue a permit therefor to the applicant.

(Emphasis added.) Defendants argue this provision enabled the City to reexamine whether Plaintiff's project complied with local planning and zoning ordinances and to deny the permit for failure to meet those standards even though the Planning Commission previously determined the project complied with those standards. Defendants acknowledge the Clatsop County Circuit Court rejected their argument during the mandamus proceeding. The court concluded the City's land use planning process for conditional use permits required the Planning Commission to review all of the zoning issues presented in a given project, including issues such as the off-street parking requirements. The court concluded the Planning Commission determined the project met all zoning and land use requirements when it approved Plaintiff's application for a conditional use permit, and that decision was binding on the City after the period for appeal of the Planning Commission's decision passed without objection. *See* § 15.045(6)(c) (the written order of the Planning Commission is the final decision on the matter unless an appeal has been filed). *See also Doney v. Clatsop County,* 142 Or.App. 497, 503, 921 P.2d 1346 (1996) (a party who had the opportunity to participate in a land use decision may not collaterally attack that final decision in a later proceeding). The court, therefore, concluded the City was precluded from reexamining the zoning issue when Plaintiff filed his application for

a building permit that complied with his conditional use permit.

This Court agrees. During the land use hearing, Plaintiff litigated the issue whether the proposed use complied with all City planning and zoning ordinances. The Planning Commission determined the proposed use complied, and the time for appeal of that decision passed without objection. The parties agree Plaintiff's building permit application and the attached plans and specifications were wholly consistent with the conditional use permit. In fact, the City approved Plaintiff's building permit application immediately after the state court ordered it to do so to the extent the building permit application complied with the conditional use permit. This Court, therefore, finds Plaintiff had a legitimate entitlement to develop his property in a manner consistent with the conditional use permit previously granted by the City after notice and public hearing and a legitimate entitlement to the issuance of a building permit that allowed him to develop his property in a manner consistent with the conditional use permit. Accordingly, Plaintiff has established as a matter of law that he had a constitutionally-protectible property interest to develop his property in a manner consistent with the conditional use permit and in the issuance of a building permit consistent with that conditional use permit.

**b. Deprivation of Protected Property Interest**

■ Even if Plaintiff had a protectible property interest, Defendants contend they did not deprive Plaintiff of that interest in a constitutionally significant manner. Defendants stress they did not deny Plaintiff's building permit application but merely delayed the issuance of that permit. Defendants seem to argue this temporary interference with Plaintiff's use of his real property did not constitute a taking under the Fifth Amendment and, therefore, was not an unconstitutional deprivation of Plaintiff's property in violation of the Fourteenth Amendment. The Court finds Defendants' argument without merit.

Defendants rely on *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002). In that case, the Supreme Court held a temporary moratorium on development that was imposed during the normal process of devising a land-use plan did not constitute a *per se* taking of property that required compensation under the Fifth Amendment Takings Clause. *Id.* at 1488. Contrary to Defendants' argument, the Supreme Court did not hold that delays in obtaining permits are "inappropriate occasions for a taking claim." (Defendant's Memorandum in Support of Summary Judgment, pg. 7). The Supreme Court simply declined to establish a categorical rule regarding temporary takings. *Id.* at 1486. In any event, the issue here is not whether a temporary regulatory taking triggers a requirement for just compensation under the Fifth Amendment. Even "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment.' " *Perkins v. City of West Covina,* 113 F.3d 1004, 1010 (9th Cir.1997), *overruled on other grounds,* 525 U.S. 234, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999) (quoting *Fuentes v. Shevin,* 407 U.S. 67, 85, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). The Court, therefore, concludes the temporary nature of the deprivation here does not preclude a finding of a constitutionally significant deprivation of Plaintiff's property under the Fourteenth Amendment.

Moreover, a careful review of the record shows Defendants did not merely delay temporarily Plaintiff's building permit while they made a land use decision. Instead, each individual Defendant unequivo-

cally told Plaintiff that he would not receive a building permit even if his plans complied with the previously issued conditional use permit and that he must redesign his project to meet additional requirements. As noted earlier, the record reveals Johansson reviewed Plaintiff's application for a building permit as City Engineer. Johansson determined Plaintiff's building permit could not be approved as submitted and communicated his concerns to Pearson. As City Planner, Pearson was the City official charged with "signing off" on the building permit application with respect to its compliance with land use laws. Johansson unequivocally told Pearson that he could not approve the building permit. Although Pearson initially signed off on the application, he apparently changed his mind after his conversation with Johansson. Pearson then wrote a letter to Plaintiff and explained the City would not issue the building permit unless Plaintiff redesigned his project to comply with the City's off-street parking ordinances. After receiving the letter, Plaintiff attempted to satisfy the City's concerns and offered to redesign the project even though the City had previously determined the original project met all zoning ordinances. Eventually, Johansson told Plaintiff he would not receive a building permit even if he redesigned the project to meet the newly-cited off-street parking ordinances.

Defendants each unequivocally told Plaintiff they would not approve his application for a building permit as submitted. Based on the foregoing, the Court finds Defendants effectively denied Plaintiff's application as originally submitted and as previously approved by the Planning Commission and, in effect, retroactively revoked the conditional use permit the City previously issued to Plaintiff. The Court, therefore, concludes Defendants' actions deprived Plaintiff as a matter of law of his protected interest in developing his property in a manner that complied with the conditional use permit previously granted by the City.

### c. Adequacy of Process Provided

To determine the extent of process that is due under given circumstances, a court must weigh several factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "At the core of the due process clause is the right to notice and a hearing 'at a meaningful time and in a meaningful manner.'" *Sinaloa Lake Owners Assoc. v. City of Simi Valley,* 882 F.2d 1398, 1405 (9th Cir. 1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). When applying the *Mathews* test, courts generally hold "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Weinberg v. Whatcom County,* 241 F.3d 746, 753 (9th Cir.2001) (internal quotations and citations omitted) (emphasis in original). Only under "extraordinary circumstances" may the government deprive a person of property without a prior hearing. *Id.* at 865–66 (quoting *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). Thus, "[s]ummary governmental action taken in emergencies and designed

to protect the public health, safety and general welfare does not violate due process." *Armendariz,* 31 F.3d at 866. Similarly, no pre-deprivation process is required if the government action was the result of the random, unforeseeable act of a public employee, it was impracticable for the government to provide pre-deprivation process, and the government offered adequate post-deprivation procedures. *Id.* (citing *Parratt v. Taylor,* 451 U.S. 527, 541, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

Defendants contend state law provided Plaintiff with adequate procedures to satisfy the demands of procedural due process. In particular, Defendants point to the existence of a state claim for inverse condemnation, the right to appeal the denial of a building permit to the City Commission, and the mandamus proceeding. Plaintiff, on the other hand, argues Defendants violated his procedural due process rights because they failed to give him any notice or an opportunity to be heard before making their decision to withhold the building permit and before their *de facto* revocation of the previously-issued conditional use permit.

■ Defendants have not articulated any "extraordinary circumstances" in this case that justify their failure to provide Plaintiff with any pre-deprivation process. The record also does not suggest Defendants reasonably believed an emergency existed or it was impossible or impracticable to hold a hearing before revoking Plaintiff's conditional use permit or deciding not to grant his building permit. Plaintiff had not begun construction of the ministorage units. He merely was awaiting the issuance of his building permit. The Court, therefore, concludes extraordinary circumstances to justify the deprivation of Plaintiff's property without a prior hearing did not exist in this case.

■ Moreover, the Court finds the *Mathews* balancing factors weigh in favor of a pre-deprivation hearing under these circumstances. Plaintiff's private interest in the previously-approved conditional use permit and his entitlement to a building permit in compliance with that use was "considerable." *See Weinberg,* 241 F.3d at 753 (landowner's private property interest in previously-approved short plats and permits to clear, to fill, and to grade the property was considerable). Plaintiff already had run the gauntlet of Oregon's land use laws during the conditional use process: Plaintiff had submitted an application for a conditional use permit; Pearson had reviewed the application and recommended approval by the Planning Commission; the Planning Commission held a public hearing on the application after giving proper notice; the Planning Commission had questioned Plaintiff about the proposed use and, in particular, the parking requirements; the Planning Commission had determined Plaintiff's proposed use met the City's zoning requirements; and the Planning Commission had issued the conditional use permit. The time for appellate review of the Planning Commission's decision passed without objection. Plaintiff then spent considerable resources to prepare an application for a building permit that complied with the approved use, including detailed plans and specifications, and he reasonably expected approval of the application would be simple and uncomplicated. By withholding the building permit and requiring Plaintiff to redesign his project in a manner inconsistent with the previously-approved conditional use permit, Defendants deprived Plaintiff of the lawful use of his property and his legitimate entitlement to a building permit without first giving him the opportunity to be heard.

The government interest in effectively denying the building permit and revoking

the conditional use permit without a prior hearing was minimal. As previously noted, there is no evidence in the record to show exigent circumstances existed. In addition, there is no evidence to show a predeprivation hearing would have placed undue fiscal or administrative burdens on the City. The City easily, quickly, and cheaply could have provided Plaintiff with an opportunity to be heard at another public hearing before the Planning Commission.

Finally, the Court must consider the risk of erroneous deprivation presented by the procedural safeguards in place in this matter. The record shows no predeprivation procedural safeguards were in place to ensure Defendants properly decided whether to grant Plaintiff's application for a building permit. Even after Defendants' decision to withhold the permit was made, Plaintiff was not given the opportunity to be heard by the Planning Commission, the body that initially determined Plaintiff's use met all zoning requirements. Nonetheless, Defendants seem to argue the risk of erroneous deprivation was negligible because Plaintiff had adequate postdeprivation remedies.

First, Defendants rely on the City's internal appeals procedure. The building permit appeals procedure on its face, however, only applies to adverse decisions of the Building Inspector made pursuant to certain specialty codes enumerated in the Oregon Revised Statutes. *See* § 9.01.090.010. Plaintiff, therefore, did not have an opportunity to appeal directly Defendants' decision to withhold a building permit based on City zoning ordinances.

Defendants also point to the availability of an inverse condemnation proceeding in state court for Plaintiff's state takings claim. Although the Ninth Circuit has held the Fifth Amendment Takings Clause does not require a state to provide a pretaking notice or opportunity to be heard,

the court has never held the state need not provide any predeprivation procedures simply because postdeprivation inverse condemnation procedures are available. *See Sinaloa Lake,* 882 F.2d at 1405 (citing *Cassettari v. County of Nevada,* 824 F.2d 735, 738–39 (9th Cir.1987)). Inverse condemnation procedures are time-consuming and expensive, and they provide little assurance that a property owner will not suffer erroneously the temporary loss of his property. This Court, therefore, finds Plaintiff's ability to pursue inverse condemnation proceedings after the fact and, potentially, to recover damages for the reduction in the value of his property does not satisfy the requirements of due process. Similarly, the Court finds Plaintiff's ability to pursue and to obtain a writ of mandamus does not constitute adequate postdeprivation process. Because Plaintiff was not offered a timely, inexpensive postdeprivation procedure to test the appropriateness of Defendants' actions, the Court finds the risk of erroneous and lengthy deprivation of Plaintiff's property interest was significant in this matter.

Based on the foregoing, the Court concludes the *Mathews* factors weigh in favor of Defendants providing Plaintiff with a pre-deprivation hearing in this case. The Court, therefore, concludes Defendants' conduct violated Plaintiff's right to procedural due process as a matter of law.

### 2. Qualified Immunity

■■■■■ Qualified immunity protects a government official from suit for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity, like absolute immunity, is a personal defense and it offers no protection for conduct performed in an

individual's official capacity. *Kentucky,* 473 U.S. at 159, 105 S.Ct. 3099. Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, although it is an affirmative defense, courts should attempt to resolve immunity questions "at the earliest possible stage in litigation." *Id.* at 201, 121 S.Ct. 2151.

■■■■■■ When considering whether a government official is entitled to qualified immunity, a court first must determine whether the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate the defendant's conduct violated a specific constitutional right. *Brown v. Li,* 299 F.3d 1092, 1100 (9th Cir.2002). If the facts alleged establish a constitutional violation, the court then must decide whether the constitutional right at stake was clearly established at the time of the alleged violation. *Id.* The plaintiff bears the burden of proving the constitutional right allegedly violated was clearly established at the time of the defendant's misconduct. *Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir.2002). Finally, if the plaintiff shows the right was clearly established, the court must assess whether an objectively reasonable government actor would have known that his or her conduct violated the plaintiff's constitutional right. *Id.*

■■■■■ As noted, the Court concludes Plaintiff has established Pearson and Johansson violated his constitutional right to procedural due process as a matter of law. Nonetheless, Johansson and Pearson argue they are entitled to qualified immunity because Plaintiff's constitutional right was not clearly established at the time of their misconduct and, in any event, their actions were reasonable because they received the advice of counsel on this issue. The crux of Defendants' arguments appears to be that Plaintiff's right to a predeprivation hearing was not clearly established be-

cause his property right in the issuance of the pending building permit was not well established under Oregon law. Defendants seem to contend it was questionable at the time "whether the City had waived its ability to require compliance with all City zoning requirements when it approved the conditional use permit."

The Court has found Plaintiff had a protectible interest in developing his real property in accordance with the conditional use permit previously approved by the City. By withholding the building permit, Johansson and Pearson effectively revoked that permit and restricted Plaintiff's use of his property without notice or an opportunity to be heard. At the time, Oregon law clearly established that a land use decision made after proper notice and hearing is a final administrative decision not open to collateral attack or unilateral reversal. *See Doney,* 142 Or.App. at 503, 921 P.2d 1346. Furthermore, when Johansson and Pearson decided to withhold Plaintiff's building permit and to prevent development of his property in compliance with his conditional use permit, the law was well established that the Fourteenth Amendment's due process clause guarantees the right to a predeprivation hearing except under extraordinary circumstances. *See Armendariz,* 31 F.3d at 868. As noted, Defendants do not contend such extraordinary circumstances were present in this case, and the record does not contain any evidence that indicates exigent circumstances existed or otherwise shows a predeprivation hearing would have been impracticable. Accordingly, the Court concludes Plaintiff had a clearly established right to a predeprivation hearing under these circumstances.

Nonetheless, Defendants Johansson and Pearson maintain they reasonably believed their actions were constitutional because they reasonably relied on the advice of

counsel. The record, however, reflects Defendants did not seek the advice of the City Attorney until several days after Pearson mailed the letter to Plaintiff in which he effectively denied Plaintiff's application for a building permit. In addition, Pearson mailed this letter some time after Johansson unequivocally told Pearson that he could not grant the building permit. Thus, Defendants' decision to deny the permit without an opportunity for Plaintiff to be heard was made and the effective denial had occurred before Defendants sought the advice of counsel. The Court, therefore, concludes Defendants did not rely on counsel's opinion letter to justify their actions.

Johansson and Pearson knew the Planning Commission previously had approved Plaintiff's proposed use of the Property after appropriate notice and a public hearing pursuant to the City's extensive land use ordinances. The Court finds it would not have been reasonable for Johansson and Pearson to believe they could withhold Plaintiff's building permit and, in effect, revoke the Planning Commission's approval of the conditional use permit without first providing Plaintiff a similar opportunity to be heard.

Accordingly, the Court concludes Johansson and Pearson are not entitled to qualified immunity on Plaintiff's procedural due process claim. There are no genuine issues of material fact present in this case, and Plaintiff has shown he is entitled to judgment as a matter of law. The Court, therefore, grants Plaintiff's Motion for Summary Judgment on the issue of liability and denies the Motion for Summary Judgment filed by Defendants Johansson and Pearson.

### 3. Damages

As noted earlier, the Court concludes Plaintiff's claim for his attorneys' fees incurred in the mandamus proceeding are barred by the claim preclusion doctrine. The parties agree Plaintiff sustained $30,208 in lost profits as a result of the delay in the construction of the ministorage units caused by the improper withholding of Plaintiff's building permit. Accordingly, the Court grants Plaintiff damages in the amount of $30,208 on his procedural due process claim against Johansson and Pearson.

### B. Plaintiff's Claim Against Defendant City of Warrenton

■ Local governments "are liable for constitutional violations under § 1983 only if the individual [official] who committed the violation was acting pursuant to a local policy, practice or custom." *King County v. Rasmussen*, 299 F.3d 1077, 1089 (9th Cir.2002).

■ Plaintiff also seeks summary judgment on his procedural due process claim against the City.[2] Nonetheless, Plaintiff has not offered any evidence to establish that Johansson and Pearson violated Plaintiff's right to procedural due process as the result of a City policy, practice, or custom nor has Plaintiff argued the City is liable under any other theory. Accordingly, the Court finds Plaintiff has failed to show he is entitled to summary judgment against the City as a matter of law. The Court, therefore, denies Plaintiff's Motion for Summary Judgment on his procedural due process claim against the City.

### CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judg-

---

**2.** Defendant City of Warrenton moved for summary judgment on this claim on *res judi-* *cata* grounds only.

ment (# 8) as to the portion of Plaintiff's claims that seek damages for attorneys' fees incurred in the mandamus proceeding in state court. The Court also **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's substantive due process claim and **DISMISSES** that claim **with prejudice.** In addition, the Court **DENIES as moot** Defendants' Motion for Summary Judgment as to Plaintiff's Fifth Amendment claim because Plaintiff voluntarily withdrew that claim and **DENIES** the remainder of Defendants' Motion.

The Court also **GRANTS** Plaintiff's Motion for Summary Judgment (# 12) as to the procedural due process claim against Defendants Johansson and Pearson and awards Plaintiff $30,408 in damages. The Court **DENIES** the remainder of Plaintiff's Motion.

IT IS SO ORDERED.