**Mark WEINBERG; Randy Powers; Elizabeth Powers, Plaintiffs–Appellants,**

v.

**WHATCOM COUNTY; Nathan W. Brown, Defendants–Appellees.**

No. 98–36088.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 21, 2000

Filed Feb. 27, 2001

Kurt Denke (argued), Seattle, Washington, for the plaintiffs-appellants.

Randall J. Watts, Chief Civil Deputy, Whatcom County Prosecuting Attorney, Bellingham, Washington, for defendant-appellee Whatcom County.

Carol Morris (argued), Kenyon Law Firm, Issaquah, Washington, for defendant-appellee Nathan Brown.

Before: REAVLEY,* CYNTHIA HOLCOMB HALL, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must determine, among other issues in this land-use litigation, whether a developer's right to procedural due process is violated when the county planning agency fails to provide a hearing before halting a previously approved land development project.

I

Appellants Mark Weinberg, Randy Powers, and Elizabeth Powers ("Weinberg") were owners of two tracts of real property located in Whatcom County, Washington ("County"), part of the "Strawberry Shores" development. Three short plats were approved by the County in May of 1992, and permits for clearing, fill and grade activities were issued two years later with a number of conditions, including erection of a 50–foot no-entry buffer.

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

On August 19, 1994, a dispute arose over Weinberg's removal of vegetation and his right to place fill material in the buffer area, and Bill Florea, the County's Land Use Division Manager, told Weinberg to desist from dumping fill or he would be faced with a stop work order. Believing that he was authorized to clear and to fill the buffer area under applicable ordinances and permits, Weinberg persisted in his activities, anticipating that doing so would allow him to appeal to the County, thus moving the dispute into "another forum." Florea thereupon issued a stop work order to Weinberg on August 25, 1994, prohibiting clearing, grading and filling activities in the buffer area. Nathan Brown, Director of the County's Planning and Development Services, concurrently sent a letter to Weinberg directing him to restore the buffer area to its previous condition, expanding the stop work order to the remainder of the property, and imposing a six-year development moratorium on the site.

Weinberg appealed the stop work order to the County hearing examiner on September 14, 1994, but the hearing examiner declined review for lack of jurisdiction. On September 21, 1994, Brown sent another letter to Weinberg, informing him that the County would vacate Weinberg's short plats if he failed to take immediate action to pay $8,310.25 in fines, to revegetate the buffer area, and to perform certain other erosion control measures. After Weinberg informed Florea that he would not comply with these conditions, the County revoked Weinberg's permits and vacated his short plats.

On September 29, 1994, Weinberg appealed to the County Council. On April 27, 1995, the Council struck down the six-year development moratorium and lowered Weinberg's fines to $750, but ruled that no

appeal from the County's decision to vacate the short plats was properly before it. The Council also upheld the County hearing examiner's ruling that he did not have jurisdiction over Weinberg's appeal from the stop work order.

In the spring of 1995, Weinberg sold his interest in the Strawberry Shores property for $125,000. On May 8, 1995, the current owners of the property filed an application for writ of review and a complaint for declaratory judgment in Whatcom County Superior Court. Weinberg remained a nominal party to this suit because the $750 fine upheld by the County Council related to him personally. The suit was partially settled in the fall of 1996, and the County permitted the project to go forward. No order of settlement was entered with the Court, however, and the case was later dismissed without prejudice on November 26, 1997, for failure to prosecute.

Meanwhile, on June 30, 1997, Weinberg filed this suit in the district court of the Western District of Washington, alleging: (1) a state negligence claim; (2) a taking claim pursuant to the Washington State Constitution, art. I, § 16; (3) a federal civil rights claim under 42 U.S.C. § 1983, for a taking in violation of the Fifth Amendment; and (4) a federal civil rights claim, for failure to provide Fourteenth Amendment due process, both substantive and procedural.[1]

The district court set a firm trial date of November 2, 1998, and issued an order, consistent with the local rules, requiring that discovery be completed by July 13, 1998, and that expert witnesses and the bases for their opinions be discovered at least 60 days prior to the close of discovery, i.e., May 13, 1998. When asked in interrogatories for the amount of damages

---

1. Under *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir.1996) (en banc), the substantive due process claim is properly subsumed by the takings claims. "Substantive due process analysis has no place in contexts already addressed by explicit textual provisions of con-

stitutional protection, regardless of whether the plaintiff's potential claims under those amendments have merit." *Id.* at 1325–26. In light of the existing takings claims, we do not address Weinberg's substantive due process claims as such.

he was seeking, Weinberg responded that it would be the subject of an expert report, but that he had not yet determined whom he would call as his expert witness at trial. Weinberg failed to file an expert witness list or expert report by the May 13th deadline. On June 26, 1998, Weinberg stated in his deposition that he still did not know what his damages were. He never updated his answers to the relevant interrogatories and the County never moved to compel answers to these questions.

In June 1998, Weinberg moved for summary judgment against the County on procedural due process grounds. In August 1998, the County filed a cross-motion for summary judgment, arguing, in part, that all claims should be dismissed because Weinberg failed to submit evidence of damages, a threshold element of his claims, by the close of discovery. In his papers opposing summary judgment, Weinberg explained that he had trouble procuring expert services due to a lack of funds and asserted that his expert report would be ready by October 1, 1998. At the September 24, 1998, hearing on the motions for summary judgment, counsel for Weinberg repeated that there were certain "practical considerations" which made it difficult to retain an expert earlier and requested the court's "indulgence" for an additional week to file an expert report. Nevertheless, Weinberg never formally moved the court to postpone the summary judgment motion or extend the time for discovery.

In its September 29, 1998 order, the district court held that Weinberg's short plats and permits constituted protected property rights. It denied Weinberg's due process-based motion for summary judg-

ment, however, because no pre-deprivation county hearing was required and there was a question of fact as to whether the post-deprivation remedies were adequate. The court then proceeded to grant the County's cross-motion for summary judgment, dismissing all of Weinberg's claims for failure to offer any proof of damages.[2]

Weinberg timely appeals from the district court's dismissal of his claims as well as its denial of his motion for summary judgment on procedural due process grounds.

## II

■ As a threshold matter, the County argues that this suit should be barred because of the res judicata effects of the Superior Court suit. This argument fails. "Because the state proceeding was a mandamus action, the ordinary claim preclusion rules that bar parties from relitigating claims already decided by courts on the merits do not apply here." *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir.1999). Furthermore, a dismissal without prejudice is not a decision on the merits and thus lacks preclusive effect.

## III

■ We must next determine whether the district court abused its discretion in refusing to "indulge" Weinberg by postponing the summary judgment motion so that he might submit an expert report long after the deadline for filing such report had passed. Federal Rule of Civil Procedure 56(f) provides a mechanism whereby a party opposing a motion for summary judgment may, by affidavit, state valid reasons why he is temporarily unable to present "facts essential to justify the party's

---

**2.** Although it is hardly clear from the district court's order, it would seem that the court held, as an alternate basis for dismissal, that Weinberg's claims should be dismissed as a discovery sanction pursuant to Fed. R. Civ. Proc. 37(c)(1), for failure to submit a timely expert witness list. The County itself, however, does not believe that we should review the district court's decision "under the standard applicable for discovery sanctions under Rule 37" but instead invites us to review the court's ruling under the standard for summary judgment. Thus, we do not address the question of whether the district court abused its discretion in dismissing Weinberg's claims as a discovery sanction-if this was, in fact, an alternate basis for its ruling.

opposition" to such motion. Fed. R. Civ. Proc. 56(f). If the court grants the party's 56(f) request, the court may (1) refuse to grant summary judgment; (2) order a continuance to permit affidavits to be taken or discovery to be had; or (3) make such other order as is just. *Id.* Rule 56(f) thus protects parties from a premature grant of summary judgment. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2740 (3d ed.1998).

We have recognized that "a district court should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *California v. Campbell,* 138 F.3d 772, 779 (9th Cir.1998). At the same time, we have held that " '[f]ailure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment.' " *Id.* (quoting *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986)) (alteration in original). Significantly, Weinberg never moved the court under Rule 56(f) for additional time to obtain the expert testimony necessary to substantiate his allegations of damages. His request in his memorandum in opposition to the County's motion for summary judgment that the district court allow him to file an expert report on October 1 was plainly inadequate. "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)." *Id.* (quoting *Brae Transp.,* 790 F.2d at 1443). Indeed, in denying Weinberg's motion for reconsideration, the court noted that Weinberg failed to "request additional time for discovery or request a continuation of trial."

Thus, it is quite clear that the district court did not abuse its discretion in refusing to await Weinberg's filing of an untimely expert report before proceeding to summary judgment.

## IV

The district court dismissed Weinberg's claims on summary judgment for failure to offer any proof of damages, which the court characterized as an essential element of Weinberg's claims. "Where discovery has been completed, summary judgment is appropriate when a party challenged by motion fails to offer evidence supporting an element of a claim on which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because Weinberg failed to offer competent evidence of damages, dismissal on summary judgment was appropriate with respect to all claims for which Weinberg bore the burden of establishing the amount of actual harm he suffered as a result of the County's actions. We have observed that plaintiffs " 'must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award.' " *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 808 (9th Cir.1988) (quoting *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.,* 773 F.2d 1506, 1509 (9th Cir.1985)). Thus, "[s]ummary judgment is appropriate where appellants have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *Id.* at 808 (citing *Rickards v. Canine Eye Registration Found., Inc.,* 704 F.2d 1449, 1452 (9th Cir.1983)).

## A

Weinberg's state negligence claims are typical tort claims. "In order to recover in negligence against a municipal government, appellant must prove all the elements of his tort, including the existence of a duty owed to him, breach of that duty, causation, and damages." *Georges v. Tudor,* 16 Wash.App. 407, 409, 556 P.2d 564 (1976). Proof of damages is required because "the purpose of a tort action is to compensate for loss sustained and to restore the plaintiff to his former position."

Restatement (Second) of Torts § 549(2) cmt. g (1977). Because Weinberg failed to offer any evidence establishing the amount of damage he suffered as a result of the County's alleged negligence, the district court did not err in granting the County's motion for summary judgment on the state negligence claims.[3]

**B**

■ The state and federal[4] takings claims are also rooted in the notion of adequate compensation. Washington Constitution, Article I, § 16, states that "[n]o private property shall be taken or damaged for public or private use without just compensation having been first made." Wash. Const. art. I, § 16. Similarly, the Fifth Amendment of the United States Constitution, which constrains municipalities through its incorporation by the Fourteenth Amendment, states "nor shall private property be taken for public use, without just compensation." In light of Weinberg's failure to introduce any evidence of damages, summary judgment was appropriate as to both the state and federal takings claims because both claims require proof that the regulatory action caused deprivation of all economic use. *Ventures Northwest Limited Partnership v. State*, 81 Wash.App. 353, 363, 914 P.2d 1180 (1996) (Washington state takings claims); *Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 841 F.2d 872, 877 (9th Cir.1987) (Federal takings claims). Evidence pertaining to damages is essential to the determination that all economic use of the land has been forestalled. Thus, the district court did not err in granting the County's motion for summary judgment on Weinberg's state and federal takings claims.

**C**

A procedural due process claim, unlike negligence and takings claims, is not root-

ed in the notions of adequate compensation and economic restitution but is based on something more-an expectation that the system is fair and has provided an adequate forum for the aggrieved to air his grievance. Aspirations of ensuring procedural due process are founded on a hope that the process of dispute resolution will be just, even when the substantive outcome is not. *See, e.g., Joint Anti–Fascist Committee v. McGrath*, 341 U.S. 123, 162, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) (describing the paramount importance of a "feeling of just treatment" by the government).

■ This procedural aspiration can lead to the award of nominal damages, even where substantive injury cannot be proved.

> Because the right to procedural due process is "absolute" [in that][ ] it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, ... we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

*Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (citations omitted). Given the availability of nominal damages, Weinberg need not prove actual damages to have an actionable procedural due process claim. Consequently, the district court erred in granting the County's motion for summary judgment on this claim premised on Weinberg's failure to prove damages. Although the district court properly granted summary judgment on the actual damages component of Weinberg's due process claim, his claim based on nominal damages remains.

**V**

We next turn to the issue of whether the district court erred in denying Weinberg's

---

3. We need not address the issue whether Whatcom County owed an individual duty to Weinberg.

4. We assume without deciding that the Federal takings claim is ripe.

motion for summary judgment on his procedural due process claim. Weinberg argues that he was deprived of his property without due process of law by the August 25, 1994, stop work order issued by Bill Florea, Nathan Brown's expansion of the stop work order and imposition of a six-year development moratorium on the property, and the County's subsequent vacation of Weinberg's short plats and revocation of his permits.

### A

■ We first analyze whether Weinberg possessed a cognizable property interest. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Issued permits and approved plats are analogous to a driver's licence, which the Washington Supreme Court recognized to be the subject of a valid property interest in *Broom v. Department of Licensing,* 72 Wash.App. 498, 505, 865 P.2d 28 (1994). Hence, according to Washington law, Weinberg had a valid property interest in his validly approved permits and short plats.

The County, citing *Rhod–A–Zalea v. Snohomish County,* 136 Wash.2d 1, 10, 16, 959 P.2d 1024 (1998), and *Eastlake Community Council v. Roanoke Associates,* 82 Wash.2d 475, 481, 513 P.2d 36 (1973), argues that, even if the permits and plats once constituted cognizable property rights, they are no longer valid once a developer violates the conditions attached to their issuance. This argument is misplaced. Both *Rhod–A–Zalea* and *Eastlake* involve the self-executing nature of vested permits, holding that vested permits are not cognizable property rights if they do not conform to existing regulations. We need not concern ourselves with the self-executing nature of vested permits because the permits and plats involved in this case had already been validly approved.

### B

Weinberg argues that the County deprived him of these cognizable property interests without due process of law when it failed to provide him a pre-deprivation hearing before issuing the stop work order and development moratorium, revoking his permits, and vacating his approved short plats. To determine whether a pre-deprivation hearing is required, we weigh several factors as set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (quoting *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. 893). The Court has observed that, in applying this test, it "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Id.* (emphasis added); *see also Memphis Light, Gas, and Water Div. v. Craft,* 436 U.S. 1, 19, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) ("Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest."). The pre-deprivation hearing need not be extensive, merely "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination...." *Craft,* 436 U.S. at 16, 98 S.Ct. 1554.

■ We have also observed, however, that "where the potential length or severity of the deprivation does not indi-

cate a likelihood of serious loss and where the procedures ... are sufficiently reliable to minimize the risk of erroneous determination," a prior hearing may not be required. *Id.* Moreover, a pre-deprivation hearing is not required where the deprivation was not foreseeable or where it would otherwise be impracticable to provide such a hearing. *See, e.g., Zinermon,* 494 U.S. at 139, 110 S.Ct. 975. When the deprivation of property results from an individual's exercise of duly authorized discretion in the context of an established State procedure, both the foreseeability and the practicability criteria will generally be satisfied. In such circumstances, as the *Zinermon* Court acknowledged, "[a]ny erroneous deprivation" will be foreseeable, because it "will occur, if at all, at a specific, predictable point in the [decision-making] process." *Id.* at 136–37, 110 S.Ct. 975; *see also Honey v. Distelrath,* 195 F.3d 531, 534 (9th Cir.1999); *Armendariz v. Penman,* 31 F.3d 860, 866 (9th Cir. 1994), *rev'd in part on other grounds en banc,* 75 F.3d 1311, 1318 (9th Cir.1996). A pre-deprivation hearing will also be practicable, because the state can alter its established procedure to provide a hearing. *Zinermon,* 494 U.S. at 137, 110 S.Ct. 975.

## C

██ The County contends that it was not practicable to hold a hearing prior to Bill Florea's issuance of the stop work order and Nathan Brown's expansion of it because swift action was needed due to Weinberg's alleged creation of a soil erosion and water contamination emergency. We agree with the district court that questions of fact remain as to whether a pre-deprivation hearing was required in these circumstances.

██ On the other hand, no such factual issues remain unresolved with respect to the County's vacation of Weinberg's approved plats. The *Mathews* factors clearly

weigh in favor of a pre-deprivation hearing in these circumstances. Weinberg's private interest in his approved plats was considerable. By vacating the plats, the County effectively deprived Weinberg of the economic value of his property and rendered nugatory his prior efforts and expenses incurred to develop it. There was a marked absence of any alternative procedural safeguards, as well. Not only did the County's Technical Committee vacate Weinberg's short plats without providing him a prior opportunity to be heard, it did so without holding a Committee meeting of any kind. The attendant risk of an erroneous determination by the Committee was, accordingly, significant.[5] With respect to the third *Mathews* factor, providing Weinberg an informal hearing prior to the deprivation would have entailed only minor administrative costs and burdens for the County.

Nor does the County's vacation of the plats fall within one of the exceptions to the general rule favoring a hearing *before* the deprivation of a cognizable property interest. The Technical Committee's action was duly authorized by County officials and, hence, was quite foreseeable. Provision of a prior hearing was otherwise practicable. There was simply no nexus between any possible emergency Weinberg's continued construction might have occasioned and the County's vacation of his short plats. At the time the County vacated his plats, all work on the property had been suspended for over a month. In these circumstances, we hold that the County violated Weinberg's right to procedural due process as a matter of law by failing to provide a hearing prior to vacating his short plats. *See Harris v. County of Riverside,* 904 F.2d 497, 502–03 (9th Cir.1990) (holding that property owner was entitled to notice and hearing before county deprived him of his property interest by "severely altering the permissible uses of [his] land"). Thus, we reverse the district

---

**5.** We note that the County subsequently re-

scinded the order vacating the short plats.

court's denial of Weinberg's motion for summary judgment on this ground.

### D

Although questions of fact remain as to whether the County violated Weinberg's right to procedural due process by failing to provide a hearing before issuing the stop work order and development moratorium (or, in the alternative, by failing to offer Weinberg a prompt post-deprivation hearing), we do not remand for trial on these issues. Weinberg brought a single procedural due process claim. Because the County's vacation of his short plats violated his right to procedural due process, we hold that Weinberg is entitled to nominal damages as a matter of law on this claim. In light of Weinberg's failure to timely submit evidence of his actual damages, however, this is all the relief for which he is eligible. Thus, remand for trial on the other bases underlying Weinberg's procedural due process claim would be moot, given that Weinberg could not, in any event, receive more than the nominal damages which we have already awarded him here.

### VI

We affirm the district court's grant of Whatcom County's motion for summary judgment on Weinberg's state negligence and state and federal takings claims. We reverse the district court's grant of Whatcom County's motion for summary judgment on Weinberg's procedural due process claim. Finally, because the County violated Weinberg's right to procedural due process as a matter of law by vacating his short plats without a prior hearing, we reverse the district court's denial of Weinberg's motion for summary judgment on his procedural due process claim.

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and RE-MANDED for determination of fees and costs. The parties shall bear their own costs on appeal.