OPINION
{¶ 1} Plaintiff-appellant Viola Park, Ltd. appeals from the February 23, 2006, Judgment Entry of the Fairfield County Court of Common Pleas in Case No. 2006 CA 00017 and the April 26, 2006, Judgment Entry in Case No. 2006 CA 00030.[1]
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Viola Park, Ltd. was interested in developing two adjacent parcels of land located in Violet Township, which is in Fairfield County, Ohio, into a residential subdivision. The parcels are located outside of the boundaries of appellee City of Pickerington. Although appellant was in discussions with Violet Township about the proposed subdivision, such discussions ended when appellee, after hearing about the planned development, urged appellant to have the land annexed to the City of Pickerington.
 {¶ 3} Joyce Bushman, the City Manager for the City of Pickerington, testified during her deposition that appellee City of Pickerington was interested in annexing the subject property to increase property and income tax revenues and to allow the city to grow towards State Route 33.
 {¶ 4} The pre-annexation agreement (hereinafter "annexation agreement") signed by the parties in the fall of 2000 required appellee City of Pickerington to prepare a petition for annexation within forty five (45) days of full execution of the agreement, to pay all costs and expenses in prosecuting the annexation, and to "not take any action that would result in the Viola Park property becoming non-contiguous to the City [of Pickerington] or otherwise make the Viola Park property not qualify for annexation." The agreement further called for appellee City of Pickerington to enact a City Service *Page 3 
Resolution to provide certain city services, not including water and sewer, to the property and to rezone the property R-4, which is residential with no more than 4 units per acre.
 {¶ 5} In turn, the annexation agreement required appellant to sign the petition for annexation and support the same through the annexation process. The annexation agreement further provided in paragraphs three (3) and four (4) as follows:
 {¶ 6} "3. Water and Sewer. Viola Park has secured from Fairfield County (County) a letter dated October 12, 2000, a copy of which is attached hereto as exhibit `B', wherein the County commits to provide water and sewer service for the subject Property. A final engineering plan describing the Water and Sewer service connections shall be prepared by Viola Park within three (3) months of completion of the annexation and will be submitted to the County. Upon approval of the County Engineer a copy of the plan will be given to the City for its information. As regards to the City, Viola Park shall be solely responsible for all cost of construction of the Sanitary sewer and Water lines. It is a condition of Viola Park that the water and sewer be provided by the County.
 {¶ 7} "Viola Park will build the on-site water and sewer improvements per the specifications of the County. Upon completion of the construction of the water and sewer improvements to such specifications, the lines shall be accepted by the County, and thereafter the County shall be responsible for the maintenance and repair of such lines.
 {¶ 8} "4. Storm Water. As to storm water, the property will meet the Storm Water Management Ordinances and Rules of the City of Pickerington and any other regulatory agency which has authority to review storm water disposal. If Viola Park's *Page 4 
storm water plan meets the above, the City agrees Viola Park may use the creek located on the real property under Viola Park's control to discharge storm water from such real property."
 {¶ 9} In accordance with the annexation agreement, appellee City of Pickerington prepared the annexation petition, annexed the land pursuant to Ordinance No. 2001-117, passed on October 24, 2001, enacted a resolution to provide services, and, in Ordinance No. 2001-118 passed on November 6, 2001, designated the property to R-4. Appellant submitted the preliminary plats for the subdivision on March 26, 2002 and final plats on July 31, 2002. Effective October 17, 2002, the final plats were approved by appellee City of Pickerington and then recorded in accordance with R.C. 711.04.
 {¶ 10} No building permits are issued by appellee City of Pickerington until streets and other necessary infrastructures for a subdivision have been constructed. Pursuant to Pickerington Codified Ordinance Section 1258.30, street, sewer, utility and other infrastructure improvements must be constructed "within one year of acceptance of the final plat, contingent upon unforeseen delays or extensions of time by Council," or the "platting process shall begin anew" and previous plat approvals "shall be null and void."
 {¶ 11} On or about May 6, 2003, the Pickerington City Council adopted Ordinance No. 2003-41, which imposed a moratorium for one year from the effective date on housing permits in order to control residential growth. The ordinance indicated that the effective date was June 5, 2003. The Ordinance provided that 100 housing permits would be issued during the moratorium and that such permits would be issued *Page 5 
based on a quarterly lottery system. On or about May 20, 2003, Ordinance No. 2003-47 was adopted which amended Ordinance No. 2003-41 to provide that the moratorium on housing permits would commence on August 1, 2003.
 {¶ 12} For various reasons, the infrastructure for Viola Park was not completed by October 17, 2003, which is within one year of the final acceptance of the plat on October 17, 2002. Thus, appellant's plat became null and void in accordance with Pickerington Codified Ordinance Section 1258.30. Appellant did not receive notice from appellee that the plat was now null and void. Appellee, in its brief, claims that no notice was required because the ordinance was self-effectuating.
 {¶ 13} In the interim, the voters of the City of Pickerington, as part of the November 2002 election, had passed a ballot initiative that limited the future density of single-family residences to two (2) per acre, with an R-2 designation. Since, as is stated above, appellant's plats became "null and void", appellant was affected by the change in density. Appellant was allowed to have four residences per acre on the original plat, but would only be allowed to have two on a new plat.
 {¶ 14} Thereafter, appellant, on August 15, 2003, filed a complaint for declaratory judgment in the Fairfield County Court of Common Pleas in Case No. 03 CV 607. Appellant, in its complaint, alleged that the moratorium on housing permits established by Ordinances 2003-41 and 2003-47 was unconstitutional since it impaired the contract between appellant and appellee and that the moratorium constituted a breach of the parties' annexation agreement and a taking without just compensation. After the trial court, via an entry filed on November 5, 2003, found Ordinances 2003-41 and 2003-47 to be constitutional, appellant, on or about January 7, 2005, filed a Motion for Leave to *Page 6 
file a Second Amended Complaint[2] to include all legal claims relating to appellee's application of Codified Ordinance 1258.30 to Viola Park's property. Such Motion was denied pursuant to an Entry filed on February 3, 2005.
 {¶ 15} Subsequently, on June 8, 2005, appellant filed a complaint for declaratory judgment and damages against appellee in the Fairfield County Court of Common Pleas. Such case was assigned No. 05 CV 490. Appellant, in its complaint, sought a declaration as to the validity of City of Pickerington Codified Ordinance Section 1258.30. Appellant, in its complaint, also alleged that City of Pickerington Codified Ordinance Section 1258.30 was in conflict with state law, that appellee had breached the annexation agreement and committed fraud, and that appellee had taken appellant's property without just compensation. Appellant also set forth a claim of promissory estoppel.
 {¶ 16} Both parties filed Motions for Summary Judgment. As memorialized in a Judgment Entry filed in Case No. 05 CV 490 on February 23, 2006, the trial court granted summary judgment in favor of appellee.
 {¶ 17} On the same date, the trial court, in an entry filed in Case No. 03 CV 607, stated, in relevant part, as follows:
 {¶ 18} "It appearing that the claims raised by Plaintiff in this matter may be either moot or controlled by res judicata as a result of this Court's February 23, 2006 Judgment Entry filed in Viola Park, LTD.V. City of Pickerington, Case NO. 05 CV 490, the parties are hereby ORDERED to notify this Court on or before March 9, 2006 how they wish to proceed with the present case. Said notice shall be filed as a Memorandum to the Court outlining the respective party's position." *Page 7 
 {¶ 19} Both parties then filed motions regarding the issue of res judicata. Pursuant to a Judgment Entry filed on April 26, 2006, in Case No. 03 CV 607, the trial court found that the doctrine of res judicata applied and that there were "no remaining justiciable issues." The trial court, in its entry, stated, in relevant part, as follows:
 {¶ 20} "The contract between Plaintiff and Defendant was the pre-annexation agreement. This Court determined in Case No. 05CV490 that Defendant did not breach its contract [the pre-annexation agreement] with Plaintiff. Further, in light of the Court's determinations in the February 23, 2006 Entry filed in Case NO. 05CV490, as to the self-government, `home rule' doctrine, constitutional issues, contract, estoppel, and fraud issues, this Court finds that the claims that Plaintiff contends remain in this case after the July 14, 2004 Entry have been determined and disposed of by the Entry in Case NO. 05CV490. Thus, those claims are controlled by res judicata and have been rendered moot and Defendant City of Pickerington is entitled to judgment in its favor in the present case."
 {¶ 21} Appellant now appeals from the trial court's February 23, 2006, Judgment Entry, raising the following assignments of error in Case No. 06 CA 17:
 {¶ 22} "I. THE TRIAL COURT ERRED WHEN IT HELD THAT CITY OF PICKERINGTON CODIFIED ORDINANCE SEC. 1258.30, WHICH PURPORTS TO VACATE APPROVED FINAL PLATS THAT HAVE BEEN PROPERLY RECORDED UNDER STATE LAW, IS A CONSTITUTIONAL EXERCISE OF MUNICIPAL HOME-RULE AUTHORITY UNDER ARTICLE 18, SECTION 3 OF THE OHIO CONSTITUTION. *Page 8 
 {¶ 23} "II. THE TRIAL COURT ERRED WHEN IT HELD THAT THE RECORDED FINAL PLATS FOR VIOLA PARK WERE VACATED BY THE PROVISIONS OF PICKERINGTON CODIFIED ORDINANCE SEC. 1258.30 EVEN THOUGH THE DELAYS IN CONSTRUCTING THE INFRASTRUCTURE WERE `UNFORESEEN' AND THE CITY GAVE NO NOTICE, HELD NO HEARING, AND MADE NO DETERMINATION THAT THE DELAYS WERE FORESEEN.
 {¶ 24} "III. THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT DISMISSING VIOLA PARK'S ALTERNATIVE CLAIMS FOR BREACH OF CONTRACT AND PROMISSORY ESTOPPEL EVEN THOUGH THE CITY'S CONDUCT PREVENTED VIOLA PARK FROM RETAINING THE ZONING CLASSIFICATION PROMISED BY THE CITY.
 {¶ 25} Appellant also appealed from the trial court's April 26, 2006, Judgment Entry in Case No. 06 CA 30, raising the following assignment of error:
 {¶ 26} "THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OFRES JUDICATA IN ITS JUDGMENT ENTRY OF APRIL 26, 2006, THEREBY, FINDING THAT VIOLA PARK'S CONTRACTUAL CLAIMS ASSERTED IN THE INSTANT CASE WERE RENDERED MOOT BY THE TRIAL COURT'S FEBRUARY 23RD DECISION ENTERED IN THE VIOLA II CASE (NO. 05 CV 490)."
 CASE NO. 06 CA 17 {¶ 27} Appellant, in its first assignment of error in Case No. 06 CA 17, argues that the trial court erred in holding that City of Pickerington Codified Ordinance Section 1258.30 is a constitutional exercise of municipal home-rule authority under Article 18, Section 3 of Ohio Constitution. We agree. *Page 9 
 {¶ 28} As is stated above, City of Pickerington Codified Ordinance Section 1258.30 specifically states as follows:
 {¶ 29} "1258.30 TIME FOR CONSTRUCTION OF IMPROVEMENT. All required improvements shall be constructed within one year of the acceptance of the final plat, contingent upon unforeseen delays or extensions of time by Council. If the development is to be developed in phases, one year for each phase is allowed for completion of construction of required improvement. If the developer fails to complete construction of required improvements in accordance with this section, the platting process shall begin anew for the uncompleted phases and previous approvals for such phases shall be null and void. (Ord. 94-85. Passed 12-20-94.)"
 {¶ 30} Article XVIII, Section 3 of the Ohio Constitution gives municipalities their powers of home rule. Article XVIII, Section 3 provides as follows: "Municipalities shall have the authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Ohio Supreme Court has established the following three-part test to determine whether a municipal ordinance must yield to the provisions of a state statute: "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." Canton v. State of Ohio,95 Ohio St.3d 149, 151, 2002-Ohio-2005, 766 N.E.2d 963, citing Ohio Assn. ofPrivate Detective Agencies, Inc. v. N. Olmsted (1992),65 Ohio St.3d 242, 244-245, 602 N.E.2d 1147, and Auxter v. Toledo (1962),173 Ohio St. 444, 183 N.E.2d 920. *Page 10 
 {¶ 31} The first issue for determination is whether City of Pickerington Codified Ordinance No. 1258.30 is an attempt to exercise local police powers as opposed to an exercise of local self-government. Zoning is a valid legislative function of a municipality's police powers.[3] Euclid v. Ambler Realty Co. (1926), 272 U.S. 365,47 S.Ct. 114. While appellee contends that Section 1258.30 is not a zoning ordinance, we note that such section appears in the City of Pickerington's "Planning and Zoning Code." Moreover, we further note that the court, in Gray v. Trustees, Monclova Tp. (1974),38 Ohio St.2d 310, 314, 313 N.E.2d 366, held that the action of a township board in approving a plat was "the functional equivalent of traditional legislative zoning." Based on the foregoing, we find that City of Pickerington Codified Ordinance Section 1258.30 is an attempt to exercise local police powers because such section voids previously approved plats if construction of improvements is not completed within a year.
 {¶ 32} The next question to be answered is whether R.C. sections711.17 and 711.39, the specific sections cited by appellant, are general laws of the State of Ohio. General laws are defined as those operating uniformly throughout the state which prescribe a rule of conduct upon citizens generally, and which operate with general uniform application throughout the state under the same circumstances and conditions.Sheffield v. Rowland, 87 Ohio St.3d 9, 11, 1999-Ohio-217,716 N.E.2d 1121. Appellee, in its brief, does not dispute that R.C. Section 711.17
and Section 711.39, the sections specifically relied on by appellant, are general laws for the purpose of home rule analysis. *Page 11 
 {¶ 33} The final question for determination is whether City of Pickerington Codified Ordinance Section 1258.30 is in conflict with State law. In determining whether an ordinance is in conflict with a statute, the Ohio Supreme Court has stated: "No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa. There can be no conflict unless one authority grants a permit or license to do an act which is forbidden or prohibited by the other." The Village of Struthers v. Sokol (1923),108 Ohio St. 263, 268, 140 N.E. 519.
 {¶ 34} As is stated above, appellant specifically contends that City of Pickerington Codified Ordinance Section 1258.30 is in conflict with R.C. Sections 711.17 and 711.39.
 {¶ 35} R.C. 711.17 states as follows: "Upon the application of two thirds of the proprietors of land described in a plat of a municipal corporation, the court of common pleas may alter or vacate the plat of any such municipal corporation, addition thereto, or parts thereof, within the county."
 {¶ 36} In turn, R.C. 711.39 states as follows: "Upon the institution of proceedings by the legislative authority of a municipal corporation, the board of county commissioners of a county, the department of transportation of the state, or an individual, partnership, or corporation in the court of common pleas, for the vacation of any public streets, alley, avenue, lane, road, boulevard, driveway, or other public way, or any portion thereof, in a village, or addition to or subdivision in a municipal corporation, a plat, map or other plane representation showing such public way sought to be vacated, and all intersecting or connective public ways, shall be prepared and certified to by a licensed surveyor or engineer, and shall form a part of the petition and *Page 12 
proceedings for such vacation. Any such public way sought to be vacated shall be shown on said plat by measurements, descriptions, coloring, hatched lines, or other method of identification to distinguish the extent, limit, width, and area of the public way or parts thereof sought to be vacated from those not vacated.[4]
 {¶ 37} "Such plat, map, or plane representation shall be transferred in the office of the county auditor and recorded in the office of the county recorder of the county in which said land is located in the same manner as are plats originally transferred and recorded.
 {¶ 38} "Upon the filing of said plat, map, or plane representation with the county recorder, a cross reference to the record of the vacated portion of the plat shall be made by the recorder on the original plat of the village, or addition to or subdivision in the municipal corporation by which the dedication was made.
 {¶ 39} "Upon the institution of proceedings to vacate platted lots of a village, or addition to or subdivision in a municipal corporation for the purpose of returning such lots as acreage to the tax duplicate, the same procedure shall be required."
 {¶ 40} As is stated above, the Ohio Supreme Court, in theSokol case, has held that for a conflict to exist, the state statute must positively permit what the ordinance prohibits or vice versa. We concur with appellee that, applying such test, there is no conflict between City of Pickerington Codified Ordinance Section 1258.30 and R.C. Sections 711.17 and 711.39. The ordinance provides that if any required improvements are not completed within one year of the acceptance of the final plat, "the platting process shall begin anew for the uncompleted phases and previous approvals for such *Page 13 
phases shall be null and void." In essence, such section vacates the recorded plat if improvements are not timely completed. As noted by appellee, the "ordinance does not prohibit the landowners from initiating a court action to vacate or modify a plat" as permitted by R.C. 711.17 and does not "speak to court action," as does R.C. 711.39.
 {¶ 41} However, that said, we note that the Ohio Supreme Court, in certain circumstances, has deviated from the above test and applied what has been referred to as a "conflict-by-implication test." Such test considers whether an ordinance prohibits that which a statute implicitly permits or, presumably, whether an ordinance allows that which a statute implicitly prohibits. See, for example, Am. Fin. Servs. Assn. v.Cleveland, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776.[5] Such test has been applied in situations when, even though a statute does not expressly address conduct regulated by an ordinance, the ordinance interferes with "the uniform application of the statutory scheme."
 {¶ 42} For example, in Lorain v. Tomasic (1979), 59 Ohio St.2d 1,391 N.E.2d 726, which is cited in the American Financial Services case as an example of application of the conflict-by-implication test, the Ohio Supreme Court considered whether a municipal ordinance establishing a maximum charity bingo payout per *Page 14 
session of $1,200, which is less than the maximum $3,500 allowed by R.C.2915.09, was authorized by the Home Rule Amendment. The pertinent Ohio Revised Code section did not expressly authorize prizes that werebelow the state limit. The Ohio Supreme Court found that a conflict existed and held that the local ordinance" destroyed the uniform application of a statewide statutory scheme and prevented charities from conducting lawful operations pursuant to state law." Am. Fin.Services, supra at paragraph 43. The Ohio Supreme Court, in theTomasic case, stated, in relevant part, as follows: "[t]o allow ordinances to be enacted throughout the State reducing maximum payouts in any amount would destroy a uniform application of the newly enactedstatutory scheme. . ." Id. at 4. (Emphasis added).
 {¶ 43} In Sheffield v. Rowland, 87 Ohio St.3d 9, 1999-Ohio-217,716 N.E.2d 1121,[6] the Ohio Supreme Court decided a home-rule case involving a state statute that required a license from either a local board of health or the state Environmental Protection Agency for all facilities processing construction and demolition debris. In such case, the village of Sheffield had enacted a local ordinance that prohibits all such debris facilities in the village, despite the fact that the state had authorized them by way of a license to operate. The Ohio Supreme Court concluded that the local ordinance conflicted with the state statute because it prohibited the operation of a state-authorized facility.
 {¶ 44} Moreover, in P.M. English, Inc. v. Koster (1980),61 Ohio St.2d 17, 399 N.E.2d 72, the Ohio Supreme Court considered whether Geauga County Subdivision Regulations conflicted with R.C. 711.10. Section711.10 granted county and regional *Page 15 
planning commissions authority to adopt rules and regulations governing plats and subdivisions. R.C. 711.10 also provided that once a plat was submitted, the "approval of the planning commission or the refusal to approve shall be endorsed on the plat within thirty days after the submission of the plat for approval. . .; otherwise such plat is deemed approved. . . .
 {¶ 45} In Koster, supra, Geauga County had adopted regulations that provided for a two-step process governing plats. The regulations gave the planning commission 30 days to act upon the preliminary plat, and another 30 days to approve or disapprove the final plat. In holding that the Geauga County regulations conflicted with R.C. 711.10, the Ohio Supreme Court held as follows: "The Supreme Court of Connecticut was faced with a similar controversy in Finn v. Planning Zoning Comm. of Seymour (1968), 156 Conn. 540, 244 A.2d 391. The controlling statute there required commission action on a submitted subdivision application within 60 days, but the regulations provided for a two-step submission of preliminary and final plans, with the commission having 60 days to consider each. The court therein, at page 544, 244 A.2d at page 393, determined that the purpose of the statutory default provision was to "ensure prompt and expeditious action on subdivision applications for the protection of the subdivider. * * * To the extent that the regulations increased the time beyond the permissible period of sixty days from the submission of the application to the decision of the commission, such regulations are invalid.
 {¶ 46} "We too must conclude that the 30-day limitation in R.C. 711.10
is designed to ensure prompt action to protect the developer from bureaucratic Fairf ield County App. Case Nos. 2006 CA 00017 2006 CA 00030 *Page 16 
obstructionism. If the commission fails to act within that time, the plat is deemed approved and prime for recordation.
 {¶ 47} "Appellant attempts to circumvent this default provision by creating a two-step approval process, each with a 30-day consideration period. Under these regulations, approval of a preliminary plat is not sufficient for recordation purposes, and a subdivider proceeds at his own risk in developing the property without waiting another 30 days to ensure approval of his final plat. As stated in State ex rel. Wollett v.Oestreicher (Ohio Com. Pl. 1953), 121 N.E.2d 454, 456, 68 Ohio Law Abs. 51, 53, `the * * * Planning Commission cannot by rules and regulations limit or extend the terms of the statute. The only remedy of the commission is to refuse to approve the plat if it does not comply with the rules and regulations of the commission.'
 {¶ 48} "To the extent that Sections 307 and 308 of the subdivision regulations allow for more than 30 days, from the date a plat is filed with the commission staff until it is Finally [sic] approved or disapproved, those regulations are invalid as conflicting with R.C. 711.10." Id. at 19-20.
 {¶ 49} We find that application of the "conflict by implication" test is appropriate in this case. The Legislature has provided two very specific means to vacate recorded plats or portions thereof. As is discussed above, the two procedures are set forth in R.C. 711.17 and711.39. Both require institution of proceedings in the Court of Common Pleas. Thus, before a recorded plat or portion thereof is vacated, there would be notice and an opportunity to be heard in the court. By enacting codified ordinance Section 1258.30, the City of Pickerington has enacted a procedure that impermissibly conflicts with the procedures set forth in the Revised Code for the vacation of plats. In *Page 17 
summary, by enacting Codified Ordinance Sec. 1258.30, the City of Pickerington has undertaken to regulate how recorded plats are vacated, which is exactly what R.C. Sections 711.17 and 711.39 address. Such sections do not explicitly prohibit a municipality such as appellee from enacting ordinances regarding the vacation of recorded plats. But, such sections provide, as noted the Court in Jaussen v. Fleming (May 12, 1995), Trumbull App. No. 93-T-4973, 1995 WL 378696, unreported, very specific means in R.C. Chapter 711 for vacating existing plats. Implicitly, other means are not authorized.
 {¶ 50} We further find that there is a need for uniformity, state-wide, in the platting process that is thwarted by the enactment of codified ordinance section 1258.30. R.C. § 711.06 provides that plats, showing subdivided ground within a municipal corporation, shall be recorded in the office of the county recorder. "Upon recording, as required by section 711.06 of the Revised Code, the plat shall thereupon be a sufficient conveyance to vest in the municipal corporation the fee of the parcel of land designated or intended for streets, alleys, ways, common, or other public uses, to be held in the corporate name in trust to and for the uses and purposes set forth in the instrument." R.C.711.07. The Ohio Supreme Court has recognized that, once a plat is approved and recorded, "the municipal corporation becomes the fee owner of the land designated in the approved plat as proposed public streets."Eggert v. Puleo (1993), 67 Ohio St.3d 78, 81, 616 N.E.2d 195, citingBayer v. N. College Hill (1986), 31 Ohio App.3d 208, 211,510 N.E.2d 400. The legislature clearly provided that platting activities be recorded as public records. *Page 18 
 {¶ 51} The reason for providing uniform means for vacating recorded plats or portions thereof is apparent since a recorded plat is a public record. We concur with appellant that the "two procedures created by the General Assembly [R.C. 711.17 and 711.39] carefully protect the integrity and accuracy of the statutory platting process and ensure that proper public records are created when a plat is vacated." For example, R.C. 711.39, cited by appellant, states, in relevant part, as follows: "Upon the filing of said plat, map, or plane representation with the county recorder, a cross reference to the record of the vacated portionof the plat shall be made by the recorder on the original plat of thevillage, or addition to or subdivision in the municipal corporation bywhich the dedication was made." (Emphasis added). If there were no uniform procedures for vacation of plats, some municipalities might, in accordance with R.C. 711.39, have cross references to the record of vacated portions of a plat whereas others might not, creating confusion in the platting process. In such a case, there would be no notice to the public that portions of recorded plats were vacated. In the case sub judice, if the plat is null and void, there will be no indication of the vacation on the recorded plat.
 {¶ 52} Based on the foregoing, we find that City of Pickerington Codified Ordinance Section 1258.30 impermissibly conflicts with R.C. Sections 711.17 and 711.39.
 {¶ 53} Appellant's first assignment of error in Case No. 06 CA 17 is, therefore, sustained. *Page 19 
 II {¶ 54} Appellant, in its second assignment of error in case No. 06 CA 17, argues, in part, that the trial court erred in holding the recorded that plats were vacated by the provisions of Pickerington Codified Ordinance Sec. 1258.30. Appellant argues that the trial court's decision was error because the City of Pickerington never gave appellant any notice that it believed the delays in the required improvements should have been foreseen and never gave appellant meaningful opportunity to be heard on whether the delays were foreseen before vacating the final plats.
 {¶ 55} As is stated above, City of Pickerington Codified Ordinance Section 1258.30 specifically states as follows:
 {¶ 56} "1258.30 TIME FOR CONSTRUCTION OF IMPROVEMENT. All required improvements shall be constructed within one year of the acceptance of the final plat, contingent upon unforeseen delays or extensions of timeby Council. If the development is to be developed in phases, one year for each phase is allowed for completion of construction of required improvement. If the developer fails to complete construction of required improvements in accordance with this section, the platting process shall begin anew for the uncompleted phases and previous approvals for such phases shall be null and void. (Ord. 94-85. Passed 12-20-94.)" (Emphasis added)
 {¶ 57} Because the infrastructure of Viola Parks was not constructed within one year of the date on which the final plats had been approved, previous approval for the plats was null and void pursuant to Section 1258.30.
 {¶ 58} Procedural due process imposes constraints on governmental decisions that deprive individuals of property interests. Matthews v.Eldridge (1976), *Page 20 424 U.S. 319, 332, 96 S.Ct. 893. The fundamental requirements of due process are notice and a meaningful opportunity to be heard. Matthews, supra at 333.
 {¶ 59} In the case sub judice appellant had a valid property interest in the approved plats and, by vacating the plats, was deprived of such interest. See Weinberg v. Whatcom County (9th Cir. 2001),241 F.3d 746. Appellee vacated the plats pursuant to Codified Ordinance Section 1258.30 after finding that there were no unforeseen delays preventing appellant from constructing all required improvements within one year of the acceptance of the final plat. Appellant was never provided notice that appellee believed the delays were foreseen and was not given any opportunity to be heard on whether the delays were, in fact, foreseen or unforeseen before the plats were vacated. Moreover, there was no procedure in the ordinance for appellant, or any other developer, to request an extension based on unforeseen delays or any procedure to determine if the developer had completed the required improvements in a timely fashion. Based on the foregoing, we find that appellant's procedural due process rights were violated by the vacation of the plats.
 {¶ 60} Appellant's second assignment of error in Case No. 06 CA 17 is, therefore, sustained.
 {¶ 61} Based on our disposition of the above assignments of error, appellant's third assignment of error in Case No. 06 CA 17 and remaining assignment of error in Case No. 06 CA 30 are moot. *Page 21 
 {¶ 62} Accordingly, the judgment of the Fairfield County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
By: Edwards, J. Gwin, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings. Costs assessed to appellee.
[1] The Common Pleas Case Numbers are 03-CV-607 and 05-CV-490.
[2] Appellant previously had amended its complaint.
[3] Police power has been defined as the "power to guard the public morals, safety, and health, and to promote the public convenience and the common good." (Citations omitted). Automatic Refreshment Serv., Inc.v. Cincinnati (1993), 92 Ohio App.3d 284, 288, 634 N.E.2d 1053.
[4] This paragraph of R.C. 711.39 acknowledges that the legislative authority of a municipal corporation, as well as many other entities, may file proceedings to vacate streets and public ways in a plat, and when it does, it must file a plat showing the public way to be vacated.
[5] In the Am. Fin. Servs. Assn case, the Ohio Supreme Court considered whether Cleveland ordinances conflicted with state statutes involving predatory lending. The Cleveland ordinances prohibited certain terms in loans that had interest rates three and a half percentage points below the state's definition of a covered loan in Ohio and also imposed additional restrictions upon and prohibited loans in some cases that were otherwise permissible under the Revised Code. In short, the Cleveland ordinances purportedly altered standards imposed by the Revised Code governing certain types of loans. As noted by Justice Resnick in her dissent in Am. Fin. Servs. Assn, based on this test [the "conflict by implication" test], . . ., the majority reasons that by prohibiting certain lending practices on certain mortgage loans carrying an interest rate of more than ten percentage points above the yield on Treasury securities, the state has impliedly granted lenders an irrefragable right to engage in those same predatory practices in all counties and cities throughout Ohio, so long as they charge a lower interest rate. Having thus found implicit state authority for freedom from regulation while charging interest up to the threshold rate at which the statutory regulations are triggered, the majority is then able to conclude that the ordinances and statutes are in conflict because the former prohibit certain loans with interest rates three and a half percentage points below the rate at which the state has impliedly authorized them." Id. at paragraph 81.
[6] The Ohio Supreme Court, in American Fin. Serv. Assn. v.Cleveland supra., indicated that that it had applied the "conflict-by-implication" test in Sheffield. *Page 1